THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LARRY MOODY, Defendant-Appellant.

Third District    Nos. 80-386, 80-457 cons.

Opinion filed July 2, 1981.

Robert Agostinelli and Frank Ralph, both of State Appellate Defender's Office, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE SCOTT delivered the opinion of the court:

The defendant, Larry Moody, appeals from his conviction for burglary following a jury trial in the Circuit Court of Will County. The defendant was sentenced to a 4-year term of probation which was subsequently revoked. He now serves a 6-year term of imprisonment.

Two issues are presented for review: (1) whether the circuit court erred in denying the defendant's motion to quash his arrest and suppress evidence seized; and (2) whether the court erred in considering matters outside the record in determining the credibility of the State's principal witness at the suppression hearing. We reverse and remand.

Because we have reversed the original judgment of conviction, we also vacate the order revoking the defendant's probation and sentencing him to 6 years imprisonment.

Following the defendant's indictment for the offense of burglary, he moved *inter alia* to quash his arrest and suppress physical evidence, claiming his arrest on December 29, 1979, at Silver Cross Hospital, Joliet, Illinois, was made without probable cause.

Shortly after 9 p.m. on December 29, 1979, Joliet police officer Robert Briney responded to a reported burglary at the Collector's Gallery. He found that someone had broken and entered through a large plate glass window, broken a glass display case, and removed three firearms. The thief apparently cut himself while breaking the glass case because Briney discovered several droplets of blood in and around the case. No description of any suspects was given. Briney called in this information and an instruction to alert local hospitals that might treat the wounded suspect. The weapons were recovered in a truck later identified as not belonging to the defendant.

At 9:30 p.m. Officer Clifford Erwin received a radio dispatch which indicated that a possible burglary suspect was being treated at Silver Cross Hospital for a laceration. Erwin arrived 30 minutes later and found the defendant lying on a hospital cart being treated for a 3- to 4-inch laceration on the upper part of his right leg. Erwin learned from a hospital employee that the defendant had entered the hospital at approximately 9:20 p.m. The hospital is approximately 3 miles from the Collector's Gallery. Officers Fleck and Nagra had arrived shortly before Erwin and had learned from the defendant that he had been attacked in a local tavern "by a couple of guys" who cut the defendant with a bottle. Erwin then spoke to the defendant, who he knew, and asked where he lived. When the defendant answered "Around," Erwin asked where he had slept the preceding night and the defendant replied he had slept at a Regal 8 Motel. Erwin further questioned the defendant about his place of employment, and the defendant replied he worked at Joliet Paint and Glass. The officer then advised the defendant that he would like to question the defendant concerning a burglary at a gun and coin shop. Erwin then read the defendant his *Miranda* rights. The defendant stated he understood his rights, but he denied having any knowledge of the burglary. Erwin replied he did not believe the defendant, but "knowing the defendant as he did," Erwin decided against further questioning.

Erwin then contacted Briney at the Collector's Gallery and exchanged information with Briney. Erwin spoke with Thomas Pennington, the store owner, who said that he knew the defendant and that the defendant had recently been in the store looking at guns. The defendant, who lay on a hospital cart approximately 30 feet from Erwin, called the officer back and said he "had a friend right around the corner" who had a gun shop which he had recently visited. He had handled several guns, including an M-1 carbine, which was the same model as one of the stolen weapons. Although the defendant did not refer to the name of the gun shop, Erwin assumed the defendant was referring to the Collector's Gallery. Erwin then asked the defendant whether the police could take a blood sample from him. The defendant refused this request.

Another officer showed Erwin the defendant's boot, which had been removed by the hospital staff along with the rest of his clothes. The boot contained particles of glass embedded in the sole. Erwin then instructed the officer to take possession of the clothes and asked the defendant whether he would come down to the police station to have his fingerprints and photograph taken. Erwin made this request in spite of his knowledge that the Joliet police already had the defendant's fingerprints and photograph. Erwin added that the police would provide some clothes at the station for the defendant, who at the time wore only a hospital gown. Erwin ordered Officer Nagra to accompany the defendant to the station house, but Nagra was not to arrest the defendant. The record is unclear whether the defendant heard that instruction.

According to Erwin's testimony, the defendant was not under arrest at the hospital on December 29. Moreover, he admitted at the suppression hearing that no probable cause then existed to arrest the defendant. Although Erwin testified that the defendant was free to leave the hospital, Erwin never so informed him. Erwin concluded the defendant was the burglar only after police matched the defendant's fingerprints to fingerprints found inside the glass display case.

Officer Nagra testified that he collected the defendant's surgical dressings and clothes and escorted him to the station. The defendant still wore only a hospital gown. When asked whether he would have restrained the defendant had he attempted to leave Nagra's custody, Nagra said he was uncertain whether the defendant should be restrained, and said he would contact Erwin for instructions in such a circumstance. At the station, police took the defendant's fingerprints and photographs, gave him some clothes, and drove him to a local tavern. The defendant posted no bond, nor did the police file an arrest sheet.

The defendant testified he never told the police that he would willingly go to the police station. Although the officers did not tell him he was under arrest, they never informed him that he was free to leave. In

fact, the defendant assumed he was arrested. When the defendant inquired about his clothes at the police station, Nagra told him the clothes were being held as evidence.

Defense counsel argued that the police had in fact arrested the defendant, but that the arrest was not supported by probable cause. The circuit court agreed that the police had arrested the defendant on December 29, but ruled that probable cause to arrest existed. Therefore, the seizure of the defendant's clothes was made pursuant to a lawful arrest. Accordingly, the court denied the motion to quash the arrest and suppress the physical evidence.

The defendant now contends that the propriety of the officers' actions should not be viewed as whether they had probable cause to arrest, but whether they had probable cause to detain the defendant as defined in *Dunaway v. New York* (1979), 442 U.S. 200, 60 L. Ed 2d 824, 99 S. Ct. 2248. In response, the State initially argues that the defendant has waived this issue by failing to raise it during the suppression hearing.

The United States Supreme Court in *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254, applied the fourth amendment and its exclusionary rule to statements made as a result of an illegal arrest or seizure. The court rejected the argument that *Miranda* warnings alone attenuated the illegality of an arrest, believing that without the exclusionary rule, police could wantonly arrest suspects without probable cause and immunize statements derived therefrom simply by giving *Miranda* warnings. In *Dunaway*, the court considered the question of what constituted an illegal seizure for the purpose of invoking the *Brown* rule.

In *Dunaway*, the police, who clearly had no probable cause to arrest, picked up and brought the defendant to the police station where he was interrogated about a robbery-murder. Prior to making an incriminating statement, Dunaway had not been told he was under arrest, he had not been booked, but he was advised of his *Miranda* rights. The State argued that the defendant was never arrested and that the procedure used there was similar to the *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, stop-and-frisk exception to the fourth amendment's warrant clause. The State contended that police may detain an individual upon mere reasonable suspicion for questioning for a reasonable and brief period of time under carefully controlled conditions. In rejecting this argument, the court found the circumstances of Dunaway's detention to be indistinguishable from a traditional arrest:

> "Petitioner was not questioned briefly where he was found. Instead, he was taken from a neighbor's home to a police car, transported to a police station, and placed in an interrogation room. He was never informed that he was 'free to go'; indeed, he would have been physically restrained if he had refused to

accompany the officers or had tried to escape their custody. The application of the Fourth Amendment's requirement of probable cause does not depend on whether an intrusion of this magnitude is termed an 'arrest' under state law. The mere facts that petitioner was not told he was under arrest, was not 'booked,' and would not have had an arrest record if the interrogation had proved fruitless, while not insignificant for all purposes, see *Cupp v. Murphy*, 412 U.S. 291 (1973), obviously do not make petitioner's seizure even roughly analogous to the narrowly defined intrusions involved in *Terry* and its progeny. Indeed, any 'exception' that could cover a seizure as intrusive as that in this case would threaten to swallow the general rule that Fourth Amendment seizures are 'reasonable' only if based on probable cause." *(Dunaway v. New York* (1979), 442 U.S. 200, 212-13, 60 L. Ed. 2d 824, 836, 99 S. Ct. 2248, 2256.

In concluding, the *Dunaway* court declared that an individual's fourth amendment rights to privacy free from unwarranted governmental intrusion should not hang on whether the intrusion is labeled an arrest or an investigatory detention, but whether the police so severely intruded upon interests protected by the fourth amendment necessarily to trigger the traditional safeguards against illegal arrest.

■■ As a general rule, an appellant may not raise an issue for the first time on appeal. *(People v. McAdrian* (1972), 52 Ill. 2d 250, 287 N.E.2d 688.) Admittedly the defendant did not advance the *Dunaway* illegal detention argument at the suppression hearing and instead argued that the police had in fact arrested him without probable cause at the hospital.

■■ However, the court exhaustively examined the circumstances surrounding the hospital questioning and detention to determine whether a fourth amendment violation occurred. In fact, despite the officers' testimony to the contrary, the court found they had arrested the defendant. For this court to rule that the defendant has waived the argument advanced today on appeal would exalt form over substance in direct contravention of *Dunaway*. This is especially true because regardless of whether the defendant was traditionally arrested or detained for custodial interrogation, the ultimate issue to be decided is whether the police action was supported by probable cause.

Accordingly, we conclude the defendant sufficiently raised the issue of his detention for this court to consider whether the circuit court erred in denying the defendant's motion to quash his arrest and suppress physical evidence. See also *People v. Miller* (1980), 89 Ill. App. 3d 973, 412 N.E.2d 175.

*Dunaway* presented the issue of the legality of custodial questioning on less than probable cause for a full-fledged arrest. There, the court had little doubt that the accused was seized in the fourth amendment sense

when he was taken involuntarily to the police station for custodial interrogation. However, the court gave little indication which facts it considered determinative in reaching this conclusion and whether other kinds of detentions would also constitute illegal seizures. See 3 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment §9.6, at 42-44 (1981 Supp.).

In several respects the case at bar is similar to the facts of *Dunaway*. Although Erwin testified that the defendant was not under arrest, he advised the defendant of his *Miranda* rights before initiating questioning. Although the officers claimed the defendant was free to leave the hospital, they never so informed him. (Compare *United States v. Mendenhall* (1980), 446 U.S. 544, 64 L. Ed. 2d 497, 100 S. Ct. 1870.) More importantly, the officers removed the defendant's clothes from the hospital, leaving him wearing only a hospital gown, and thus substantially impeded any efforts the defendant might have made to leave. Moreover, the initial detention occurred at an unreasonable time and place. Here at least three officers questioned the defendant while he lay in a hospital cart following treatment for his injured leg.

Yet in spite of this undisputed evidence, the State contends that the defendant, while lying on a hospital cart and wearing only a hospital gown, voluntarily agreed to accompany the officers to the police station and, thus, no detention occurred. The State also attempts to distinguish the instant case from *Dunaway* by arguing that the purpose of the detention here was to obtain the defendant's fingerprints and photographs only and not to interrogate him.

With regard to the State's contention that no detention occurred because the defendant consented, we find that, considering the totality of the circumstances, the defendant's consent to accompany the officers was not in fact voluntary and was the product of duress or coercion. Specifically, we find that when the defendant purportedly consented to accompany the officers, he was already detained, thus making that consent a product of the detention. (See *United States v. Hill* (5th Cir. 1980), 626 F.2d 429.) In light of the defendant's physical condition and the officers' unauthorized taking of his clothes, a reasonable person would not have believed he was free to leave. Indeed, Officer Nagra's testimony indicates that, although he did not believe the defendant was under arrest, he did not believe the defendant was free to leave the officer's custody. Compare *People v. McMahon* (1980), 83 Ill. App. 3d 137, 403 N.E.2d 781 (taking of the defendant's shoes indicative of restraint), with *United States v. Mendenhall* (1980), 446 U.S. 544, 64 L. Ed. 2d 497, 100 S. Ct. 1870 (officers specifically told the suspect she was free to leave); and *People v. Miller* (1980), 89 Ill. App. 3d 973, 412 N.E.2d 175.

The State also attempts to distinguish the instant case from *Dunaway*

by arguing that the defendant was not being detained for custodial interrogation. This argument is based on the officers' questioning at the hospital instead of the police station and on the absence of interrogation once the defendant arrived at the station. This first distinction is immaterial; what matters is whether the questioning restrains the defendant's freedom, and if so, does the officer have probable cause. (*People v. Miller* (1980), 89 Ill. App. 3d 973, 412 N.E.2d 175.) Indeed, in *Dunaway* the seizure would have been just as violative of the fourth amendment if it had been preceded by on-the-scene questioning.

■■ The second ground offered by the State to distinguish the instant case from *Dunaway*, that no probable cause was necessary because the detention was not for the purpose of custodial interrogation, also fails. The issue of whether police may detain a suspect without probable cause to gather fingerprints has been presented to the Supreme Court previously in *Davis v. Mississippi* (1969), 394 U.S. 721, 22 L. Ed. 2d 676, 89 S. Ct. 1394, but the court refused to resolve the question. Although the defendant argues that *Dunaway* requires that any intrusion greater than a *Terry* stop and frisk must be supported by probable cause, Professor LaFave persuasively argues that a Davis-type detention may not be incompatible with the *Dunaway* holding. (3 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment §9.6, at 42-44 (1981 Supp.).) Nevertheless, this court likewise declines to decide the issue because we find that in light of Officer Erwin's admission that he knew the Joliet police already had the defendant's fingerprints and photograph when Erwin requested the defendant to go to the station, the request was completely unjustified and was in all likelihood intended to be a subterfuge in hopes of obtaining an incriminating statement. In fact, the officers obtained more than fingerprints and photographs when they seized the defendant's clothes without his consent. Surely the seizure of a person's clothing amounts to such an intrusion of his rights to invoke the traditional safeguard of probable cause.

Having decided that the defendant was involuntarily detained, we must now decide whether the detention was supported by probable cause.

The case at bar presents a unique situation in that the arresting officer admitted at the suppression hearing that he had no probable cause to detain the defendant at the hospital on December 29. The officer believed he had probable cause to arrest the defendant only after fingerprints found inside the glass display case were matched to the defendant's fingerprints. The defendant argues that an arresting officer must have an actual belief supported by objective factors that the accused committed the offense in question, that the officer's subjective belief is controlling, and that absent this belief, no probable cause exists. In support of this

argument, the defendant refers to *People v. Miller* (1972), 7 Cal. 3d 219, 226, 496 P.2d 1228, 1233, where the California Supreme Court declared:

"Probable cause to arrest without a warrant represents an *objective* legal standard by which to measure the reasonableness and sufficiency of the officer's *subjective* beliefs that the defendant has committed an offense. [Citations.] '[*U*]*nless* it is first established that the police officer *believed* that the crime * * * had been committed by the [defendant], the issue of probable cause does not arise, for it would be a logical absurdity for the courts to be asked to determine the reasonableness of an officer's belief that that particular crime had been committed unless it were first established that the officer did entertain such a belief.' [Citation.]"

■■ The application of the *Miller* rule to the case at bar is unwarranted. Although Illinois recognizes that an officer's mere suspicion is insufficient to establish probable cause or to support an arrest, no Illinois court has recognized the *Miller* holding that a subjective belief is required to support an officer's arrest. An officer's subjective belief that he may not possess sufficient facts to establish probable cause does not necessarily equate him with a finding of mere suspicion or lack of probable cause. Mere suspicion is nothing more than a hunch that is supported by insufficient facts for a reasonable person to believe that the defendant committed the offense in question. On the other hand, an officer might have sufficient facts, but he may conclude that those facts do not establish probable cause. In such a situation, the court may place itself in the position of the arresting officer and, in light of the objective evidence, substitute its judgment on the issue of probable cause for the officer's judgment. Therefore, we hold that an officer's subjective belief does not control the issue of whether probable cause to arrest or detain exists.

Nevertheless, an officer's subjective belief is relevant to the question of probable cause. (*People v. Thomas* (1980), 80 Ill. App. 3d 1121, 400 N.E.2d 1019.) In the case at bar, Erwin's subjective beliefs together with objective evidence refute the circuit court's conclusion that the officers had probable cause to detain the defendant.

■■ The State advances four facts to prove that a reasonable person would have believed that the defendant had committed the burglary at the Collector's Gallery: proximity of the hospital to the shop; the defendant's injury; the defendant's recent visit to the shop to examine a gun later stolen; and, glass embedded in the defendant's boot. These facts are simply insufficient to cause a reasonable person to believe that the defendant committed the burglary. The facts that the hospital is located approximately 3 miles from the shop and that the defendant entered the hospital shortly after the burglary took place do not lead to the reasonable

inference that the defendant committed the burglary. Likewise, the defendant's leg injury, a common wound, gives no indication that he cut his leg while burglarizing the gun shop. In fact, the injury is consistent with his story that several persons attacked him in a tavern near the hospital. The defendant's recent visit to the store is in no way unusual. The Collector's Gallery, a business open to the public, very likely is visited by scores of customers weekly. Finally, the discovery of glass embedded in the boot was part and parcel of the fourth amendment seizure and cannot be used to justify the seizure.

We do not hold that police officers may not question citizens during criminal investigations. As the Supreme Court recently declared in *United States v. Mendenhall* (1980), 446 U.S. 544, 64 L. Ed. 2d 497, 100 S. Ct. 1870, general, nonfocused personal intercourse between an officer and citizen does not constitute a detention requiring probable cause. In the instant case, the officers' initial questioning of the defendant at the hospital did not constitute a detention. However, when the officers took the defendant's clothes without his consent, the defendant was clearly detained as envisioned in *Dunaway* and that detention must have been supported by probable cause. Because we have found no probable cause existed, all physical evidence seized and statements made after the detention were seized illegally and should have been suppressed.

■■ As for the defendant's second contention, that the circuit court improperly considered matters outside of the record to determine Officer Erwin's credibility, we find that by failing to object at trial or by post-trial motion, the defendant has waived consideration of this alleged error. *People v. Miller* (1977), 46 Ill. App. 3d 882, 361 N.E.2d 373.

Accordingly, we reverse the judgment of conviction for burglary entered in the Circuit Court of Will County, vacate the sentence, and remand this cause for further proceedings.

Reversed and remanded.

BARRY and STOUDER, JJ., concur.