THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN LONGORIA, Defendant-Appellant.

Second District    No. 81—928

Opinion filed August 18, 1983.

G. Joseph Weller and Joel Teibloom, both of State Appellate Defender's Office, of Elgin, for appellant.

Robert Morrow, State's Attorney, of Geneva (Phyllis J. Perko, Martin P. Moltz, and Wendy S. Paul, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant, John Longoria, was indicted in Kane County for the attempted murder and aggravated battery of a child, four-year-old Tracy Mays. (Ill. Rev. Stat. 1981, ch. 38, pars. 8—4, 12—4.3(a).) He was found not guilty of attempted murder and guilty of aggravated battery of a child in a bench trial, and sentenced to the Department of Corrections for an extended term of 12 years.

The defendant contends (1) the court erred in refusing to strike testimony of a witness regarding statements he made due to (a) his illegal arrest, (b) failure of the police to give him his *Miranda* rights, (c) allowing the State to re-open its case and re-call a witness to testify regarding the *Miranda* rights given to the defendant, and (d) refusing to strike the witness' testimony as being inherently incredible; (2) he was not proved guilty beyond a reasonable doubt because venue was not proved; and (3) the court considered improper factors when imposing sentence.

Additionally, in a motion ordered taken with this case, the defendant asks this court to take judicial notice of the geographical boundaries of Kane County, Illinois.

On June 17, 1981, the defendant, his girl friend Mary Mays and her four-year-old daughter, Tracy, were at the defendant's residence at 608 Jay Street in Elgin. Mrs. Mays testified the defendant took Tracy to Lord's Park in Elgin at 7:30 p.m. She said she thought Lord's Park was in Cook County; but she was not sure. When they left, Tracy was healthy but she had a cut lip from an accident on a swing, and several other marks because she had fallen off her new "Jungle Gym." Mrs. Mays said she had known the defendant since November 1980 and that Tracy called him "Daddy." At 9 p.m., the defendant called her and said the car keys were locked in the car and that they would either get a ride home or walk. Tracy and the defendant returned from the park at 10 p.m. with the defendant's brother, Rick. Tracy was pale, semiconscious, and her hair and clothes were damp. Mrs. Mays and Rick took Tracy to St. Joseph's Hospital in Elgin.

An Elgin resident, Cheryl Moose, 607 South Liberty Street, lo-

cated about a mile south of Lord's Park, testified she observed Tracy, barefoot, walking south on Liberty about 9:40 p.m. Mrs. Moose said it was dark and about 55 to 60 degrees outside, so her husband went out to see if the little girl was lost. He brought her into the house. Mrs. Moose said Tracy was shivering, her clothes and her hair were damp, her lips were swollen, bloody and purple, her shirt torn, her legs scratched and dirty. She wrapped Tracy in a blanket and sat in a rocking chair with her. Mr. Moose went back outside and returned about a minute later with the defendant, who was barefoot and wearing only shorts. He said he and Tracy were swinging at Lord's Park, that she had lost the car keys for the second time that day, and that she was "in big trouble." Mrs. Moose told Tracy to go with the defendant; Tracy was holding onto Mrs. Moose's leg. Tracy and the defendant left, walking southbound on Liberty. Mrs. Moose said she thought Lord's Park was in Kane County, but she thought there was a Cook County dividing line there.

Emergency room personnel at St. Joseph's Hospital testified Tracy was in shock and very slow to respond when she was brought in by her mother and defendant's brother. Her skin was mottled, she had extensive bruises on the back of her head, her forehead and her inside upper thighs; there was a claw-like abrasion on her abdomen; her lip was cut and there was a laceration on the side of her tongue; there was hair missing from the back of her head; she vomited blood and there was blood in her urine.

Tracy did not respond to any of the nurses' or the doctors' questions about what happened until later when the questions were repeated after Mrs. Mays was asked to leave the room so they could X-ray Tracy. Tracy told the doctor who was treating her, Dr. Meenalochani Rengarajan, "My Daddy, *** my Mom's friend hurt me. He kicked me, and he pushed my head. He pulled me in the pond, and he asked me to put out my tongue and then he closed my mouth." Tracy stated to Nurse Lisa McCarthy that her father pushed her into the pond and pulled her out of the pond, that he kicked her in the tummy and the head, and that "My Daddy told me to stick out my tongue and to bite down." Nurse Wilma Zimmerman said Tracy told her "My Daddy hit me with a stick this time and last time, too." The hospital personnel contacted the Elgin police, and the Department of Children and Family Services.

Detective Mark Brictson and Detective Sergeant Cull went to the defendant's residence at 1:40 a.m. and talked with him. Also present there was a person named Lawrence Hearly. The officers told the defendant they needed additional information with regard to Tracy's

injuries, and the defendant agreed to go with them to the police station. Detective Brictson said the defendant was not placed under arrest, was not handcuffed, and was not a suspect.

Over defense objection that the defendant had not been advised of his *Miranda* rights and that the defendant's statements were not voluntary, Brictson was permitted to testify as an offer of proof that the defendant began speaking in the car on the way to the police station. The defendant related that Tracy had lost the car keys at Lord's Park and that he was upset about that. He said they had been playing in the park and that they had to walk home from the park. He said he never had occasion to spank Tracy or any of his children (he had two children by his ex-wife), although he did yell at Tracy. Detective Brictson testified Lord's Park is located in Kane County.

When they arrived at the police station, the defendant related that a week prior he had been bouncing Tracy on a bed, unaware there was a toy beneath the sheet that was hurting her, because she tolerated the pain. Detective Brictson then advised the defendant of his *Miranda* rights in the presence of Detective Sergeant Cull. He orally advised the defendant he had a right to see a lawyer and to have the lawyer present during questioning; that anything he said would be used against him in court; and that he had a right to cease answering questions. Defense counsel did not then object to the sufficiency of the warnings given. The court determined it would withhold its ruling on the above offer of proof subject to cross-examination, and allowed the State to proceed.

Detective Brictson then testified the defendant was shown color photographs of Tracy which were taken at the hospital. The defendant said the large bruises on the insides of Tracy's thighs were because he had a tendency to play too roughly with her and to tickle her in that area. He related that she had been playing in the creek area at the park and that she threw his tennis shoe into the water. He lowered her into the water so she could get the shoe out, and that is how she got wet. He said he had been playing in the mud and Tracy, who did not like to get messy or dirty, began crying and asked him "Why are you making me eat this mud?" He stated the bruises on Tracy's chest were from the bed-bouncing incident and that the injuries to the back of her head were caused when he grabbed her hair and pulled it back. After looking at the pictures of Tracy, the defendant stated that if he caused those injuries to her, he should seek professional help and stay away from her. The defendant, age 26 at the time, was then booked and processed. On cross-examination, Detective Brictson testified the defendant did not appear to be on medication of any sort at

the time he was being questioned.

The State offered numerous exhibits for admission into evidence, primarily photographs of Tracy's injuries, and the court accepted them over defendant's general objection thereto. The State then rested, and defense counsel moved to strike Brictson's testimony because the *Miranda* rights given to the defendant by Detective Brictson were incomplete, and because *Miranda* rights were not given to the defendant before he made the statements in the police car on the way to the station at which time defense counsel contended he was under arrest. The State countered the defendant was not under arrest on the way to the police station and, therefore, no *Miranda* warnings were necessary. Further, that the *Miranda* warnings that were given to the defendant were sufficient.

Defense counsel pointed out Brictson did not testify that he advised the defendant he had a right to remain silent or that if he could not afford an attorney, one would be provided to him. Consequently, there was no showing the waiver was knowing and voluntary. Further, defense counsel asserted an additional reason to suppress the defendant's statements was that there was no probable cause to arrest him. If there was probable cause to arrest, defense counsel asserted the State could not then claim that no *Miranda* warnings were required. The State responded the officers had probable cause to arrest the defendant when he admitted at the police station that he played too roughly with Tracy. With respect to the *Miranda* rights that were given the defendant, the State asked to be allowed to reopen its case to ask Detective Brictson specially which rights he had advised the defendant of.

The court stated that it would not allow the State to reopen that portion of the proof, and withheld its ruling on the adequacy of the *Miranda* warnings pending its review of a case cited by the State. (No citation was included in the record.) With regard to the statements made prior to the giving of the *Miranda* warnings, the court stated it did not believe the defendant was in custody at the time he made the statements and they were admitted. The defendant moved for a directed finding as to both counts; the court reserved its ruling until the close of the case.

The court then read the case cited to it by the State and stated:

> "[The Court]: It's my conclusion that the *Miranda* warning as suggested by the officer does not meet with the requisite [*sic*] of either the State of California case or the earlier cases cited to this court, because of two critical items that were not listed.

MR. SPENCE [Prosecutor]: Judge, could I interrupt you just for a moment, ask the officer leave while we ***

THE COURT: Yes."

The court then ruled that all comments and discussions held after the "purported *Miranda* warning" were stricken.

Citing section 114—11 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 114—11), the State pointed out the statute provides for a hearing on the motion to suppress. The State noted the earlier offer of proof related only to the question of whether the defendant was in custody, and it had no notice that the sufficiency of the warnings would be an issue. The State requested to be allowed to reopen its case, and the court allowed its request over objection.

Detective Brictson was recalled, and testified he advised the defendant of his right to remain silent, that anything he said would be used against him in court, that he had a right to a lawyer and to have the lawyer present during the questioning; that a lawyer would be appointed for him if he could not afford one, and that he could exercise the above rights at any time. On cross-examination, Detective Brictson stated he inadvertently omitted the fact he told the defendant a lawyer would be appointed for him if he could not afford one, and remembered that omission upon reviewing his testimony after he left the courtroom. He could not recall which other specific parts of his testimony he also reviewed, although it was his practice to review "what I say on the witness stand each time I testify." Detective Brictson testified over objection that after he left the courtroom, he did not speak with anyone who had been in the courtroom during his earlier testimony. The court "revised" its earlier decision, and found against the defendant on his "motion [to strike] equivalent to the motion to suppress." Defense counsel then moved Brictson's testimony be struck as being inherently incredible; the court denied the motion.

The defendant presented two witnesses, Detective Brictson and Mrs. Mays. Brictson was questioned about whether prior to proceeding to the defendant's residence, he had been informed by anyone at the hospital that Tracy had said defendant hit her. Detective Brictson did not recall hearing anything of that sort. Mrs. Mays testified the nurses kept asking Tracy questions about "What happened?" and "Who did this to you?" but that Tracy kept falling asleep and she was not coherent for any length of time. The defendant presented an offer of proof that if Scott Mays were called to testify, he would testify that he was Tracy's natural father and that she called him "Daddy." The court refused the offer since Mr. Mays was not on the list of witnesses and had remained in the courtroom during the State's case-in-chief.

After argument, the court found the defendant not guilty of attempted murder and guilty of aggravated battery of a child.

## SUPPRESSION ISSUE

(a) *Illegal detention.*

■ Defendant first contends his statements should have been suppressed since they were the fruit of his illegal detention, citing *Dunaway v. New York* (1979), 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248, and *People v. Townes* (1982), 91 Ill. 2d 32. He asserts his detention sufficiently resembled a traditional arrest such that "a reasonable man would not have believed he was free to refuse to comply with the police." The defendant cites important factors considered in *Townes* and *People v. Fitzpatrick* (1982), 107 Ill. App. 3d 876, were that the defendants in those cases, like the defendant here, were either not advised they were not under arrest, or were free to leave, or that they could refuse to cooperate in accompanying the police officers to the station. Defendant also cites *People v. Moody* (1981), 97 Ill. App. 3d 758, wherein the court found the defendant there had been illegally detained because although the officer testified the defendant was free to leave, the defendant was not so advised, and the police had confiscated his clothes. Further, the "unreasonable time and place of the detention" would likely indicate to a reasonable man that his compliance was required. (*People v. Moody* (1981), 97 Ill. App. 3d 758, 764.) After finding the defendant there had been involuntarily detained, the *Moody* court proceeded to a determination whether the detention was supported by probable cause; it determined that it was not, and reversed and remanded for a new trial. As the defendant notes, *Moody* was reversed by the supreme court. (*People v. Moody* (1983), 94 Ill. 2d 1.) However, he finds that since Moody was detained only after his explanation of the facts engendering suspicion had been determined to be inaccurate, the police there had additional cause to arrest the defendant and, thus, he finds it is distinguished from the case at bar. Additionally, we find distinguishing the fact that the supreme court did not reach the issue raised in the alternative by the State that the defendant had not been "arrested," since it agreed with the State's other argument that there was probable cause to arrest the defendant.

Lastly, the defendant notes the subsequent giving of *Miranda* warnings does not vitiate an illegal detention.

The State argues the trial court's finding that the defendant was not in custody prior to the giving of the *Miranda* warnings is not against the manifest weight of the evidence. The State correctly

points out that a "seizure" occurs within the meaning of the fourth amendment (U.S. Const., amend. IV) only when a reasonable person, innocent of any crime would believe that he was under arrest or not free to leave in view of all the circumstances surrounding the incident. (*United States v. Mendenhall* (1980), 446 U.S. 544, 554, 64 L. Ed. 2d 497, 509, 100 S. Ct. 1870, 1877; *People v. Reed* (1982), 104 Ill. App. 3d 331, 336; *People v. Miller* (1980), 89 Ill. App. 3d 973, 978, cert. denied (1981), 454 U.S. 871, 70 L. Ed. 2d 175, 102 S. Ct. 339.) Further, it points out it has been established that police officers may question citizens during a criminal investigation, and citizens have a duty to cooperate with the police. 89 Ill. App. 3d 973, 977.

In our opinion, the court's judgment that the defendant was not in custody at the time he made statements prior to receiving *Miranda* warnings is not against the manifest weight of the evidence and no reversal is warranted. *People v. Reynolds* (1983), 94 Ill. 2d 160, 165.

"In determining whether a statement was made in a custodial setting, the court must look to all of the circumstances surrounding the questioning, with no single factor deemed controlling, and then objectively evaluate whether a reasonable, innocent person would have believed he was free to leave or was expressly or impliedly bound to remain in the presence of the police. *People v. Wipfler* (1977), 68 Ill. 2d 158, 166, 368 N.E.2d 870, 873; *People v. Cart* (1981), 102 Ill. App. 3d 173, 183, 429 N.E.2d 553, 562; see also *People v. Kennedy* (1978), 66 Ill. App. 3d 267, 383 N.E.2d 713." *People v. Savory* (1982), 105 Ill. App. 3d 1023, 1028.

The record reveals the officers proceeded from the hospital to Longoria's residence to obtain further information about Tracy's injuries. At the hospital they had talked with two other officers and Tracy's mother. When Detective Brictson was called to testify by the defendant, he stated he did not recall anyone at the hospital saying that Tracy had said it was Longoria who had hit her. During the State's offer of proof, Detective Brictson testified when he arrived at the defendant's residence, the defendant was not a suspect, nor had he been charged with any offense. When the defendant agreed to go with the officers to the police station, he was not under arrest. The defendant first looked for his glasses, but could not find them. Defendant walked out of the residence of his own free will, and he was not handcuffed. Detective Brictson further testified that it was the defendant who began speaking on the way to the police department. Although the police arrived at the defendant's residence at an early hour (1:40 a.m.), there is no indication that it was an incommo-

dius event; the record shows the presence of another man in the defendant's residence at the time the detectives arrived. Further, as noted by the State in its argument, the record is simply silent as to whether or not the defendant was advised he was free to leave or was not under arrest, or could refuse to cooperate. It has been recognized that not every station house interrogation is necessarily so custodial as to indicate an arrest. (*People v. Reed* (1982), 104 Ill. App. 3d 331, 335; *People v. Wipfler* (1977), 68 Ill. 2d 158.) The extent of the defendant's cross-examination of Detective Brictson was whether or not the defendant appeared to be nervous (yes) or to have been under the influence of any sort of medication that evening (no). Defense counsel made no further inquiry into the circumstances of the alleged illegal detention.

On this record, we believe the trial court's judgment was correct. Under the circumstances, a reasonable man, innocent of any crime, would have believed he was not under arrest and was free to leave. Accordingly, no seizure may be said to have occurred and no error requiring reversal.

(b) *Miranda warnings not timely.*

■ The defendant next contends that assuming *arguendo* the police had probable cause to arrest him when they arrived at his residence, the statements made by him prior to the time Detective Brictson advised him of his *Miranda* rights should have been suppressed because the warnings were not timely. The record shows no arrest occurred when the defendant voluntarily agreed to go with the police. Further, the record shows no interrogation occurred until after he had been advised of his *Miranda* rights. The defendant began speaking in the car, telling the officers that he and Tracy had been at Lord's Park, that she lost the keys for the car and that he had been upset about it. Later when they arrived at the station, the defendant voluntarily described an incident a week prior in which he stated Tracy had been injured when he bounced her on a bed. He was unaware at that time there was a toy beneath the sheet that was hurting her because she "tolerated the pain." At that point, Detective Brictson advised him of his *Miranda* rights, and custodial interrogation commenced when the officer showed the defendant pictures of Tracy's injuries and sought explanations from the defendant.

"Probable cause for arrest exists when facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense. [Citations.]" *People v. Lippert* (1982),

89 Ill. 2d 171, 178.

The defendant's statements were sufficient to warrant Detective Brictson's belief that an offense had been committed and that the defendant committed it. The defendant's statements reasonably inculpated him in that he admitted that he was with Tracy at the park and that he was upset with her, thus arguably establishing a motivation for the offense. He then related an alleged prior incident in which he admitted Tracy was injured as the result of his actions, but that he did not know she was being hurt because she did not tell him. Such comments evidence an attempt to exculpate himself of responsibility for at least one of Tracy's injuries. After he received *Miranda* warnings, he identified a photo of a bruise on Tracy's chest as being the result of the bed-bouncing incident.

We conclude this issue is without merit. But, in any event, any error was harmless beyond a reasonable doubt where the defendant made substantially the same statements after receiving the warnings.

The defendant disagrees with the State's additional assertion in this regard that the evidence was overwhelming and, therefore, any error was harmless beyond a reasonable doubt. He argues that the only evidence aside from defendant's own statements were repetitions of the victim's statements which he finds less than overwhelming in view of Tracy's age and condition at the time she made the statements. Again, we must concur with the State's characterization of the evidence as overwhelming. Tracy's mother testified the defendant took her to the park and that, although she had several marks already, she was basically healthy. Cheryl Moose testified the defendant told her he and Tracy were swinging at Lord's Park, that she lost the keys for the second time that day, and was "in big trouble." Also, the testimony of various witnesses as to Tracy's statements in the emergency room were admitted over defendant's objections as spontaneous declarations and as statements to a treating physician. Although we believe her statements more likely fell within the excited utterance exception, statements which are admitted as exceptions to the hearsay rule generally may be regarded as possessing an inherent reliability.

(c) *Reopening of the State's case.*

(d) *Inherently incredible testimony.*

■ The defendant asserts his statements made after he received *Miranda* warnings should have been suppressed on the ground the court abused its discretion by allowing the State to reopen its case and recall Detective Brictson to testify as to the precise warnings given to the defendant. Alternatively, he contends Detective Brict-

son's testimony was inherently incredible and should have been struck.

The State argues the court did not abuse its discretion in allowing the State to reopen, and that its ruling as to Brictson's testimony was not against the manifest weight of the evidence. Alternately, the State argues any error in this regard was harmless beyond a reasonable doubt.

We find none of the cases cited by the defendant or the State dispositive of this issue. All are distinguishable in that they do not involve the precise issue presented here. The defendant here made no pretrial motion to suppress the defendant's statements on the basis the *Miranda* warnings given were insufficient, nor did he object to the sufficiency of the warnings as testified to by Detective Brictson prior to Brictson's testimony about defendant's statements after the *Miranda* warnings were given. Instead, Brictson's testimony concluded and the State rested its case. The defendant then moved to strike Brictson's testimony due to the insufficiency of the *Miranda* warnings as testified to by Brictson.

Although the preferred procedure would have been a pretrial motion to suppress pursuant to section 114—11 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 114—11), section 114—11(g) provides such motions may be made during trial as well.

A factually similar case is *People v. Hoffman* (1981), 84 Ill. 2d 480. There it was stated:

> "In our opinion it is also within the discretion of a trial court to entertain a motion to suppress evidence made after trial has begun based on a violation of the principles announced in *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. As the Supreme Court said in *Miranda*:
>
> 'The warnings required and the waiver necessary in accordance with our opinion today are, in the absence of a fully effective equivalent, prerequisites to the admissibility of any statement made by a defendant.' (384 U.S. 436, 476, 16 L. Ed. 2d 694, 725, 86 S. Ct. 1602, 1629.) To hold that the circuit court was without discretion to hear an untimely motion to suppress in these circumstances would jeopardize the integrity of the constitutional principles upon which *Miranda* rests. The circuit court did not abuse its discretion in hearing defendant's motion to suppress.
>
> * * *
>
> Once raised, the issue became one which the People were required to meet. As the Supreme Court said in *Miranda*: '[T]he

prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.' [Citations.]" *People v. Hoffman* (1981), 84 Ill. 2d 480, 485-86.

*Hoffman* is distinguished from the case at bar in that the State there had not yet rested its case when the defendant's motion to suppress was made. The People here had rested before the defendant's motion to strike was made, which the court treated as a motion to suppress. That distinguishing factor does not warrant a different result, however. First, as noted above, the defendant did not timely object to the sufficiency of the warnings prior to Brictson's testimony concerning the defendant's statements, immediately after Brictson testified as to the warnings given. Second, in *People v. Lane* (1982), 106 Ill. App. 3d 793, this court reversed and remanded the cause where it found the State had been improperly denied its right to present evidence answering or contradicting new affirmative matters raised by the defendant during the presentation of its case. In *Lane*, the defendant moved pretrial to suppress his confession. An officer testifying for the State stated the defendant had not requested to see a lawyer while in his presence. The defendant and his mother both testified he did make a request for counsel. The State then advised the court it was entitled to and needed to present rebuttal testimony. The defendant objected, and the court denied the defendant's motion without permitting any rebuttal evidence by the State. On appeal, the defendant contended the court erred in admitting evidence of his confession made following his request for counsel. Given the circumstances of the case, this court was unable to conclude that the admission of the confession was harmless beyond a reasonable doubt. In light of its conclusion the State was denied the right to present rebuttal evidence at the hearing to suppress, it remanded the cause in order to give the State an opportunity to call rebuttal witnesses in further hearings of defendant's motion to suppress. 106 Ill. App. 3d 793, 798.

Similarly here, had the court refused, instead of granted, the State's request to reopen, it would have been reversible error since "[o]nce raised, the issue became one which the People were required to meet." *People v. Hoffman* (1981), 84 Ill. 2d 480, 486.

The defendant's last argument with regard to the suppression issue is that Detective Brictson's testimony was inherently incredible because upon testifying after the State's evidence was reopened, he stated he advised the defendant of his *Miranda* rights, including two

of the rights which his earlier testimony was lacking; *i.e.*, the right to remain silent and to have an attorney appointed if he could not afford one. The State counters that the trial court's assessment of the credibility of the witnesses and the weight to be given his testimony will not be set aside unless it is against the manifest weight of the evidence. (*People v. Patton* (1975), 33 Ill. App. 3d 923; see also *People v. Lewis* (1979), 75 Ill. App. 3d 259.) We believe the court's ruling that Brictson's testimony was not so incredible to warrant striking it was not against the manifest weight of the evidence. On direct examination after reopening, Brictson correctly enumerated the *Miranda* warnings given to the defendant, and on cross-examination only recalled that he had forgotten to mention one of the rights, the right to an appointed attorney. No reversal on this basis is warranted.

### REASONABLE DOUBT

■ The defendant claims venue was not proved beyond a reasonable doubt and his conviction must therefore be reversed. In this regard, he moved this court to take judicial notice of the geographical boundaries of Kane County. The State made no objection to this procedure. We will take judicial notice of the eastern boundary of Kane County, which runs in a north-south direction. *People v. Meid* (1970), 130 Ill. App. 2d 482.

The State has asked this court to judicially notice that 608 Jay Street, Elgin, Illinois, is in Kane County. The defendant did not object to this procedure. We will grant the request. *People v. Pride* (1959), 16 Ill. 2d 82; *People v. Clark* (1956), 9 Ill. 2d 400.

Venue is a material averment which must be proved beyond a reasonable doubt. (*People v. Rodgers* (1982), 106 Ill. App. 3d 741, 743.) The proof may be supplied by direct or circumstantial evidence. *People v. Smith* (1980), 91 Ill. App. 3d 242, 245.

It is not necessary that someone testify, in so many words, to the place where the offense was committed, but it is sufficient if the evidence as a whole leaves no reasonable doubt as to the act upon which the indictment is based having been committed at the place alleged in the indictment. (*People v. Reynolds* (1944), 322 Ill. App. 300, 303.) The venue is proved if there is evidence from which it can be inferred that the crime was committed within the jurisdiction where the prosecution took place. 322 Ill. App. 300, 303.

■ We believe the trial court could conclude beyond a reasonable doubt that the offense was committed in Kane County. Detective Brictson testified Lord's Park was in Kane County. Mary Mays was uncertain as to which county Lord's Park was located. Cheryl Moose

thought it was in Kane County, but she thought there was a Cook County dividing line there. As the official map of the city of Elgin appended to the defendant's motion shows, Lord's Park is located in both counties. The northwest part of the park, including part of one of the park's three ponds, is located in Kane County.

The undisputed evidence is that four-year-old Tracy Mays was severely beaten and kicked by the defendant. She was pushed into a pond by him at Lord's Park. The aggravated battery was committed by the defendant between the hours of 7:30 p.m., when he and Tracy left his Kane County residence, and 10 p.m., when they returned to that Kane County address. In order to get to the park, they would have had to traverse a mile. It is undisputed that the return was made on Liberty Street, the location of which is wholly within Kane County. The stop at Mrs. Moose's house was within Kane County.

In the instant case, we cannot say that the trial judge did not have sufficient proof of venue to warrant reversal. We believe venue was sufficiently proved. *People v. Barksdale* (1974), 24 Ill. App. 3d 489.

### SENTENCING; CONSIDERATION OF IMPROPER FACTORS

■ Defendant contends that in sentencing, the court improperly considered that Tracy's injuries included burns. The State concedes there is no evidence in the record that Tracy suffered any burns. However, it suggests the court meant burns in the sense of "abrasions." Defendant effectively refutes this, noting the court specifically listed abrasions as one of her injuries.

At the sentencing hearing, the prosecutor made the first reference to burns on Tracy's legs. Later, in allocution, the defendant denied Tracy's legs were burned. However, when imposing sentence, the court repeated that Tracy's injuries included burns.

The State's assertion that defendant has waived this issue, citing *People v. Baseer* (1980), 90 Ill. App. 3d 866, is without merit insofar as the post-trial motion is concerned since the motion here was timely made and heard before the sentencing occurred. However, it is true that the record fails to show the defendant objected to the judge's inclusion of burns as one of the injuries when iterating its reasons for imposing sentence. In our view, the defendant waived the issue of the court's misstatement that Tracy also suffered burns by failing to object in a timely manner.

■ With regard to the extended term imposed, the People acknowledge that section 5—5—3.2(b)(1) of the Unified Code of Corrections was not applicable here. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—

5—3.2(b)(1).) The evidence fails to show that the defendant's prior conviction in 1976 for possession of a controlled substance was "a felony of the same or greater class." The defendant failed to object to the court's erroneous remark, however, and waived this issue.

The defendant acknowledges the court's imposition of an extended term was justified under section 5—5—3.2(b)(2) (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(b)(2)) in that it found the offense brutal and heinous. (*People v. Butler* (1979), 78 Ill. App. 3d 809.) He asserts, however, that the court's improper consideration of the degree of his prior conviction may have influenced it to impose a longer extended term than it may have otherwise.

The record here lends no support to the defendant's argument, and we do not believe a remand is warranted. The court found only two mitigating factors: the defendant's willingness to support his family and his industriousness. In aggravation, it found the defendant inflicted serious injury, had a prior record, and the sentence was necessary to deter others from committing the same or similar crime. The court commented in detail on the extent of the child's injuries, stating immediately thereafter that it felt very strongly about the sentence which it was going to impose. The court then also found the defendant was over the age of 17, the crime was brutal and heinous, and (erroneously) that he had a prior felony conviction within the last 10 years.

It is clear from the record that the court was most influenced in imposing sentence by the extent of the injuries caused to the child, and nothing in the record indicates the court imposed a more severe extended term due to the defendant's prior conviction. The simple fact defendant had any prior record is properly considered in imposing a more severe sentence, if not an extended one. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(a)(3).) A sentence will not be vacated where there is nothing to indicate that the trial court's decision was influenced by an improper factor. *People v. Rush* (1980), 91 Ill. App. 3d 366, 371; *People v. Merchel* (1980), 91 Ill. App. 3d 285, 297.

The defendant has made no such showing, nor could the record support such a showing. Accordingly, we conclude no vacation or remandment for resentencing is warranted.

The judgment of the circuit court of Kane County is affirmed.

Affirmed.

NASH and VAN DEUSEN, JJ., concur.