THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JAMES DEAN PATTON, Defendant-Appellant.

Fifth District   No. 5—91—0048

Opinion filed September 14, 1993.

Daniel M. Kirwan and Lawrence J. O'Neill, both of State Appellate Defender's Office, ot Mt. Vernon, for appellant.

Robert Haida, State's Attorney, of Belleville (Norbert J. Goetten, Stephen E. Norris, and Diane L. Campbell, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE RARICK delivered the opinion of the court:

Defendant, James Dean Patton, appeals both from his convictions after a jury trial of first-degree murder, aggravated battery to a child, and cruelty to a child and from his sentence of 55 years' imprisonment imposed by the circuit court of St. Clair County on the first-degree murder conviction. No sentences were imposed on the convic-

tions for aggravated battery to a child and cruelty to a child. We affirm in part and vacate in part.

At approximately midnight on March 7, 1989, the Belleville police department received a call about a burglary/homicide at defendant's residence. When the officers arrived to investigate, they found defendant standing in front of the apartment building holding a towel around his right hand. The hand was bleeding. Defendant informed the officers someone had broken into his home and murdered his baby while he and the boy's mother had gone to the store. The officers went inside and found the baby stiff and not breathing. The baby's mother was seated on a couch in what appeared to be a state of shock. As the officers began their investigation, defendant became increasingly hysterical. He started running around the apartment, kicking and punching various objects and walls, despite repeated requests by the police to remain seated. Because defendant was interfering with the crime scene, the officers decided to transport him and the boy's mother, codefendant Carla Bowen, to the station. Both were requested to sit on a bench by the watch sergeant's desk until detectives could get their statements. Neither was booked, searched, fingerprinted, photographed, or handcuffed. Some three hours later, Bowen was taken to another room for questioning. By this time, officers had concluded that the crime scene was inconsistent with a break-in. For example, broken glass from the kitchen door, which had been kicked in, was outside the door, rather than inside. Defendant claimed he and Bowen had only been gone a half hour when the break-in occurred, but neighbors and relatives suggested they had been absent from the residence some five hours. Officers interviewed Bowen at approximately 3:50 a.m. Although not under arrest, Bowen signed a *Miranda* waiver and then gave a written statement incriminating defendant in the death of their son. Bowen was then placed under arrest, and defendant, at approximately 6 a.m., was confronted with her statement. After signing a waiver of his *Miranda* rights, defendant stated he had hit his son because he cried too much but had not intended to kill him. Defendant refused to give a written statement at this time. After an autopsy revealed the baby had received a severe traumatic beating, officers decided to reinterview Bowen and defendant. Bowen again implicated defendant. Defendant now claimed Bowen must have killed the baby. The autopsy revealed the cause of death was acute pneumonia, resulting from blunt traumas which collapsed the lungs. The report also showed the baby had been moderately malnourished. At trial, defendant continued to assert Bowen had

killed the child. The jury, however, found defendant guilty of first-degree murder.

Defendant initially argues on appeal that the trial court erred in denying his motion to suppress his statements to the police. Defendant believes his detention at the police station was involuntary, as evidenced by being held there for five hours before questioning and without being advised he was free to leave. As the police effectuated an unlawful arrest, according to defendant, his statements elicited thereafter should have been suppressed and his convictions, based primarily on those statements, should be reversed. We conclude the trial court was correct in ruling that defendant was not involuntarily detained, and consequently, his statements should not be suppressed.

The record reveals the police received a call advising them of a burglary and homicide. When they arrived at the scene, they encountered defendant, who informed them someone had broken into his apartment and killed his son. While the police began their investigation, defendant started moving throughout the residence, punching and kicking walls and objects. He went in and out of the back door which appeared to be the point of entry for the burglary. Despite repeated requests to remain seated, defendant continued to run throughout the premises. Defendant was virtually hysterical. The officers believed defendant's actions were interfering with their attempts to secure and investigate the crime scene. They also needed to get the statements of both defendant and the boy's mother. Because of the emotional state both parents were in, the police requested that they go to the station and wait for the detectives. Defendant and Bowen were seated on a bench by the watch sergeant's desk but were not under watch or secured in any manner. They were not handcuffed, searched, or fingerprinted. They were left alone together, and at no time was there any indication they would not have been allowed to leave. Defendant was not arrested until after the boy's mother implicated him in the death of their child.

■ A seizure occurs within the meaning of the fourth amendment when a reasonable person, innocent of any crime, would believe he was under arrest or not free to leave in view of all the circumstances surrounding the incident. (*United States v. Mendenhall* (1980), 446 U.S. 544, 554, 64 L. Ed. 2d 497, 509, 100 S. Ct. 1870, 1877; *People v. Longoria* (1983), 117 Ill. App. 3d 241, 249, 452 N.E.2d 1350, 1355; *People v. Reed* (1982), 104 Ill. App. 3d 331, 336, 432 N.E.2d 979, 983.) Every interrogation held at a police station is not necessarily a custodial interrogation. (*Longoria*, 117 Ill. App. 3d at 250, 452 N.E.2d at 1356.) Police officers may question citizens during a criminal investi-

gation, and citizens have a duty to cooperate, regardless of where the questioning occurs. (*Longoria*, 117 Ill. App. 3d at 249, 452 N.E.2d at 1355; *Reed*, 104 Ill. App. 3d at 336, 432 N.E.2d at 983.) Here it is logical to infer that, as the baby's parents, defendant and Bowen would wish to cooperate in the investigation. They had discovered the body, but because of their emotional states, his hysteria and her shock, they could not be interviewed at the crime scene. Under such circumstances, a reasonable person would not have believed he was under arrest or he was not free to leave. Moreover, probable cause to arrest defendant existed by the time officers questioned defendant. (See *People v. Montgomery* (1986), 112 Ill. 2d 517, 525-26, 494 N.E.2d 475, 477-78; *People v. Lippert* (1982), 89 Ill. 2d 171, 178, 432 N.E.2d 605, 608.) For these reasons, we believe the trial court properly denied defendant's motion to suppress his statements. (*Cf. People v. Townes* (1982), 91 Ill. 2d 32, 37-38, 435 N.E.2d 103, 105.) A trial court's ruling on a motion to suppress evidence will not be overturned unless it is manifestly erroneous. (See *People v. Collins* (1989), 182 Ill. App. 3d 362, 364, 538 N.E.2d 781, 783.) We see no such error here.

■ Defendant next contends the trial court erred in failing to give an Illinois pattern jury instruction defining "recklessness" after deliberations had begun when the jury requested the court's assistance as to its legal meaning in the context of involuntary manslaughter. Under the circumstances presented here, we disagree.

The jury was given instructions for both murder and involuntary manslaughter. No definition of reckless conduct was tendered at the instructions conference; consequently, none was given to the jury. When the jury requested a legal definition of "recklessly," the court refused to give the additional instruction and informed the jurors they had all the instructions they would receive. Defendant claims the court erred in refusing to give the instruction, but in fact, the issue was waived by defense counsel's failure to tender the proper instruction at the instruction conference. No party may raise on appeal the failure to give an instruction not tendered. (See *People v. Underwood* (1978), 72 Ill. 2d 124, 129, 378 N.E.2d 513, 515.) Moreover, the initial failure to tender the instruction appears to have been a deliberate tactical decision by defense counsel. At the conference over the jury's request, defense counsel stated: "I left [the instruction defining reckless] at the office under a decision that I felt that I didn't want to submit it to the jury at the particular time." Under such circumstances we cannot say the trial court abused its discretion in refusing to give the additional instruction. Moreover, any error in failing to give the definition (see *People v. Sanders* (1984), 127 Ill. App. 3d 471,

474, 469 N.E.2d 287, 290) was harmless. The jury, in finding defendant guilty of murder, found that defendant acted with knowledge. Having determined the act was intentional, the jury clearly could not have found defendant guilty of involuntary manslaughter for the required mental states are mutually exclusive. (*People v. Lucas* (1989), 132 Ill. 2d 399, 442, 548 N.E.2d 1003, 1021.) As the jury did not display confusion concerning the mental state required for murder, we conclude the trial court's decision not to give the requested instruction in this instance does not require reversal of defendant's conviction.

Defendant contends, however, the State failed to prove him guilty of murder beyond a reasonable doubt. Again we disagree.

A criminal conviction will not be set aside on review unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276.) When presented with a challenge to the sufficiency of the evidence, it is not the function of this court to retry defendant. (*Collins*, 106 Ill. 2d at 261, 478 N.E.2d at 277.) Rather, we are to examine the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Collins*, 106 Ill. 2d at 261, 478 N.E.2d at 277.) Moreover, determination of the credibility of witnesses is a jury function. (*Collins*, 106 Ill. 2d at 261-62, 478 N.E.2d at 277; *People v. Sandy* (1989), 188 Ill. App. 3d 833, 840, 544 N.E.2d 1248, 1252.) And, a conflict between experts does not necessitate a finding that the evidence was insufficient to support a conviction; it is for the jury to accept or reject an expert's conclusion. *Sandy*, 188 Ill. App. 3d at 840, 544 N.E.2d at 1252.

In order to secure a conviction for first-degree murder, under section 9—1(a)(2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1989, ch. 38, par. 9—1(a)(2)), the State must prove that the accused, in performing acts which caused the death of the victim, knew such acts created the strong probability of death or great bodily harm. (See *People v. Summers* (1990), 202 Ill. App. 3d 1, 10, 559 N.E.2d 1133, 1138.) The State, however, need not prove that the defendant's acts were the sole and immediate cause of death. (*People v. Brackett* (1987), 117 Ill. 2d 170, 176, 510 N.E.2d 877, 880; *People v. Brown* (1978), 57 Ill. App. 3d 528, 531, 373 N.E.2d 459, 462.) The State need only prove beyond a reasonable doubt that the defendant's actions were a contributing cause to a death such that the death did not result from a source unconnected with the defendant's acts. (*Brown*, 57 Ill. App. 3d at 531, 373 N.E.2d at 462; see also *People v. Kent* (1982), 111 Ill. App. 3d

733, 738, 444 N.E.2d 570, 574.) The existence of a time interval between the defendant's acts and the death of an individual does not preclude such a causal link. (*Brown*, 57 Ill. App. 3d at 531-32, 373 N.E.2d at 462.) Moreover, the defendant must take his victim as he finds him. (*Brackett*, 117 Ill. 2d at 178, 510 N.E.2d at 881.) As long as the defendant's acts contributed to the death of the victim, sufficient proof of causation still exists, despite any preexisting health condition of the victim. 117 Ill. 2d at 178, 510 N.E.2d at 881.

■■ Here, the pathologist who performed the autopsy on the child testified that the compromised condition of the infant brought on by malnutrition and a severe beating had weakened the child to the point he died of bronchopneumonia. Defendant's expert, who asserted that no injury suffered by the child was fatal, admitted the boy died from a combination of physical abuse and internal sickness. Photographs of the child exhibited extensive bruising of the head, nose, mouth, cheek, and body. In addition to this evidence, defendant also told the police he had hit the child, and Bowen implicated defendant in the death of her son. Finally, defendant staged a break-in, lied to the police, and attempted to place the blame on the mother.

Mental states, such as the intent to kill or cause great bodily harm, are not commonly proved by direct evidence. (*Summers*, 202 Ill. App. 3d at 10, 559 N.E.2d at 1138.) They, however, may be inferred from the character of a defendant's acts and the circumstances surrounding the commission of the offense. (*Summers*, 202 Ill. App. 3d at 10, 559 N.E.2d at 1138; see also *People v. Pintos* (1989), 133 Ill. 2d 286, 292, 549 N.E.2d 344, 347.) In this instance, defendant was the victim's father. He was responsible for the health of the child, and therefore any condition of ill-being was his responsibility. Instead of caring for the child, defendant beat and abused the infant. From the extent of the bruising and injuries suffered, the jury reasonably could infer defendant knew, regardless of the child's condition, especially given the disparity in size and strength, that his acts created the strong probability of death or great bodily harm. (See *Summers*, 202 Ill. App. 3d at 10, 559 N.E.2d at 1138-39; see also *Brackett*, 117 Ill. 2d at 180, 510 N.E.2d at 882.) And, defendant's actions after the death of his son further indicate guilty knowledge. (See *Summers*, 202 Ill. App. 3d at 11, 559 N.E.2d at 1139.) Under these circumstances, we conclude the evidence presented at trial was not so improbable or unsatisfactory as to create a reasonable doubt of defendant's guilt when viewed in the light most favorable to the prosecution.

■■ For his fourth point on appeal, defendant asserts his convictions for aggravated battery and cruelty to a child must be vacated as

they are based upon a single act of striking the infant about the head and face. While defendant received no separate sentences on these convictions, we agree they should be vacated in this instance. (See *People v. Lilly* (1974), 56 Ill. 2d 493, 495-96, 309 N.E.2d 1, 2.) The charges against defendant were based upon a single act of striking the infant shortly before his death. When two offenses arise from the same physical act, there is but a single offense and only one conviction is possible. (See *People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844.) We therefore vacate defendant's convictions for aggravated battery to a child and cruelty to a child.

■ For his final point on appeal, defendant contends his sentence of 55 years' imprisonment is excessive, especially in light of the 10-year prison sentence imposed on codefendant Bowen and his lack of a prior criminal record. Defendant also argues the trial court erred in relying on a fact not supported by the record, namely, that defendant killed his son to keep the infant from crying.

The imposition of punishment is one of the most important and sensitive of judicial responsibilities. (*People v. Smith* (1993), 246 Ill. App. 3d 647, 652.) We, as a reviewing court, must give great weight to the judgment of the trial court. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884.) We, therefore, will not reduce a sentence unless it clearly appears the punishment is a departure from fundamental law, its spirit and purpose, or that the penalty is not proportionate to the nature of the offense. *People v. Grau* (1975), 29 Ill. App. 3d 327, 330, 330 N.E.2d 530, 532.

Defendant was convicted of first-degree murder. Defendant complains his sentence is greatly disparate from that received by Bowen. Bowen, however, pleaded guilty to concealing a homicide. The crimes for which defendant and Bowen were convicted are not equivalent; consequently, no rational comparison of their sentences can be made. Only when codefendants convicted of the same crime receive disparate sentences is remandment warranted. (See *People v. Bailey* (1989), 188 Ill. App. 3d 278, 289, 543 N.E.2d 1338, 1344; *People v. Cook* (1983), 112 Ill. App. 3d 621, 623, 445 N.E.2d 824, 826.) Additionally, disparate sentences may be supported by the nature and extent of participation in the offense. (*People v. Kline* (1982), 92 Ill. 2d 490, 508, 442 N.E.2d 154, 162; *People v. Martin* (1980), 81 Ill. App. 3d 238, 245, 401 N.E.2d 13, 18.) While defendant may have no prior criminal record, clearly defendant's participation in the offense was greater than that of Bowen. We cannot say under such circumstances that the sentences imposed were unfairly disparate.

852

As for the reference to defendant killing his son to keep the child from crying, a court, in fashioning a sentence, may consider evidence from sources other than the trial itself. (See *People v. Meeks* (1980), 81 Ill. 2d 524, 535, 411 N.E.2d 9, 14-15.) The reference complained of came from the suppression hearing and defendant's statements to the police. We do not believe the court erred in considering such evidence. As the sentence imposed upon defendant falls within the statutory range for first-degree murder, we find no abuse of the trial court's discretion.

For the aforementioned reasons, we affirm defendant's conviction and sentence for first-degree murder. We, however, vacate defendant's convictions for aggravated battery to a child and cruelty to a child.

Affirmed in part; vacated in part.

CHAPMAN, P.J., and GOLDENHERSH, J., concur.