THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PATSY BROWN, Defendant-Appellant.

First District (3rd Division)   No. 77-486

Opinion filed January 25, 1978.—Rehearing denied March 13, 1978.

Ralph Ruebner and Martin Carlson, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Myra J. Brown, and Armand L. Andry, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

A jury found the defendant, Patsy Brown, guilty of both the attempt to

murder Cheryl Edwards (Ill. Rev. Stat. 1975, ch. 38, par. 8—4) and the murder of Cheryl Edwards (Ill. Rev. Stat. 1975, ch. 38, par. 9—1). The trial court entered judgment on the verdict of murder only and sentenced the defendant to imprisonment for not less than 14 years and not more than 14 years and a day. The defendant appeals the conviction of murder, contending that the medical evidence presented by the State fails to establish, beyond a reasonable doubt, that Edwards' death was caused by an act of Brown.

On September 12, 1975, outside of the Tough Rabbit Lounge in Chicago, Illinois, the defendant stabbed Edwards several times about the arms, chest and stomach. Shortly thereafter, the police arrested the defendant and rushed Edwards to a hospital. Edwards underwent emergency surgery; one week later on September 20, 1975, she was discharged from the hospital. She remained at her home until September 23, 1975, when according to her husband, she experienced discomfort because a wound opened, and she went to the private office of the surgeon who treated her at the hospital, Dr. Henry Pimental. After an examination, Dr. Pimental readmitted Edwards to a hospital; that night, while in the hospital's intensive care unit, she died.

Dr. Pimental, testified for the State at the defendant's trial regarding his treatment of the decedent and the cause of her death. The State presented no other expert medical testimony. Early on the morning of September 13, 1975, as the chief surgeon in the emergency room of the hospital, Dr. Pimental examined Edwards, finding several superficial stab wounds on her chest and both arms; another, more serious wound, had penetrated into her abdomen about five to six inches, lacerating her liver and stomach and causing internal bleeding, leaving about 300 cc's of blood in the stomach cavity. He performed immediate surgery to repair the damage. After a stay of seven days in the hospital, Dr. Pimental determined Edwards' condition had greatly improved, and permitted her discharge. He subsequently saw Edwards on September 23 at his private clinic. She complained to him of abdominal pain and shortness of breath. Again she was admitted into a hospital. At the hospital he inserted a chest tube to prevent damage to her lungs from bleeding. At 11 o'clock that night she died.

Based upon a reasonable degree of medical certainty and experience as a physician and surgeon, Dr. Pimental testified that Edwards' death was caused by a massive pulmonary embolism, that is the lodging of blood clots in the main vessels of the lung. The State supported its contention that the acts of the defendant caused Edwards' death with the following testimony:

> "Q. Now, once again, based upon a reasonable degree of medical certainty, upon your experience and treatment of Cheryl

Edwards, do you have an opinion as to what caused the pulmonary embolisation in this particular case as to Cheryl Edwards?

A. Since in this particular case we ruled out the abscess [*sic*] of vericose [*sic*] veins, we surmised that the blood clots originated from the site of injury, either abdomen, chest wall, or both arms.

* * *

Q. Doctor, what is the process in which a blood clot originating from a wound will travel to the lung of the patient?

A. It usually travels to the blood vessels.

Q. And, the clot then settles in the lung, is that correct?

A. Right.

Q. And, that is the cause of death of Cheryl Edwards, is that correct?

A. Correct."

On cross-examination Dr. Pimental acknowledged that a person in a healthy condition with no injuries or history of heart trouble could die of a pulmonary embolism. The defendant argues that this testimony is insufficient to prove, beyond a reasonable doubt, that her acts of stabbing caused the death of Cheryl Edwards.

■■ In a criminal trial it is the State's burden to prove all the material facts which constitute the crime; this burden never shifts to the defendant. (*People v. Weinstein* (1966), 35 Ill. 2d 467, 220 N.E.2d 432.) In a murder prosecution, these material facts are proof of death and proof of a criminal agency causing death, both of which must be established beyond a reasonable doubt. (*People v. Benson* (1960), 19 Ill. 2d 50, 166 N.E.2d 80.) Extensive medical testimony is not always necessary to show this causal relationship between death and an act of the defendant. (*People v. Jones* (1961), 22 Ill. 2d 592, 177 N.E.2d 112.) When, for example, the facts adduced engender such an obvious association between the act and death that the connection is easily understood from common knowledge and experience, no strenuous technical explanations are required by the law as adequate proof. (*People v. Jones; People v. Love* (1977), 45 Ill. App. 3d 259, 359 N.E.2d 733.) However, where causative factors are less than obvious, when they are beyond a general public perception, particular expert medical testimony is essential to sustain the connection between criminal activity and death. *People v. Manske* (1948), 399 Ill. 176, 77 N.E.2d 164; *People v. Love.*

■■■ The State's burden is not to prove that the defendant's act is the sole and immediate cause of death, but that the defendant's act was, beyond a reasonable doubt, a contributing cause to a death such that the death did not result from a source unconnected with the defendant's act. (*People v. Brown* (1973), 9 Ill. App. 3d 730, 293 N.E.2d 1.) The existence of a time interval between the defendant's act and death does not

preclude such a causal link (*People v. Hughes* (1977), 46 Ill. App. 3d 490, 360 N.E.2d 1363); this is true even where, during this interval, there has been an apparent recovery from the injuries inflicted. *People v. Harrison* (1946), 395 Ill. 463, 70 N.E.2d 596.

In the instant case the testimony of Dr. Pimental more than adequately describes the nature and extent of the injuries inflicted by the defendant upon the decedent. What the State fails to elicit, through this witness, is the essential causative relationship between the wounds and the death of Cheryl Edwards from a pulmonary embolism 11 days later. The sum of the evidence offered by the State is the opinion of the medical expert that, he "surmised that the blood clots" which developed into the death of Edwards "originated from the site of injury, either abdomen, chest wall or both arms." This statement by the doctor, coupled with foundations of fact and reasons upon which the opinion could stand would have been sufficient to relate the wounds caused by the defendant to the death of Edwards. Without such underpinnings however, it is incomplete. The weight of an expert's opinion is measured by the reasons given for his conclusion and the factual details which he marshalls in support of it. (*People v. Burress* (1971), 1 Ill. App. 3d 17, 272 N.E.2d 390; see also *Cannell v. State Farm Fire & Casualty Co.* (1975), 25 Ill. App. 3d 907, 323 N.E.2d 418; *Manion v. Brant Oil Co.* (1967), 85 Ill. App. 2d 129, 229 N.E.2d 171.) The credibility of the expert cannot be evaluated by the trier of fact on opinion alone. As held in *People v. Martin* (1963), 26 Ill. 2d 547, 188 N.E.2d 4, and *People v. Benson*, without facts which explain how the defendant's attack caused or contributed to the ultimate reason for death, an expert's testimony is inadequate to prove the connection, leaving the relation of the act and the cause of death to inference and speculation.

■■ The State argues that the rule in *People v. Meyers* (1945), 392 Ill. 355, 359, 64 N.E.2d 531, 533, applies:

> "* * * when the State has shown the existence, through the act of the accused, of a sufficient cause of death, the death is presumed to have resulted from such act, unless it appears death was caused by a supervening act disconnected from any act of the defendant."

(See also *People v. Ransom* (1975), 33 Ill. App. 3d 503, 341 N.E.2d 752; *People v. Baer* (1976), 35 Ill. App. 3d 391, 342 N.E.2d 177.) This merely means that the State is charged with proving that one act, which was sufficient to cause death, did occur and that the State has no burden to disprove all speculative causes. But application of the presumption in this case begs the question; the issue here is whether the State has demonstrated with adequate evidence the existence of an act on the part of the defendant sufficient to cause death. Unlike the numerous cases cited by the State in support of its arguments, there was no evidence of an

⚙️

autopsy, no descriptions detailing the physical condition found at death relating it to the defendant's act, no explanations of the reasons underlying the cause of death. See *e.g., People v. Hughes; People v. Harrison.*

■■ Because the insufficiency of the testimony presented in relation to the murder charge, the conviction of the defendant for murder is reversed. However, in light of the fact that the jury did return a verdict finding her guilty of an attempt to murder Edwards and considering the power of a review court under Supreme Court Rule 615(b)(3) (Ill. Rev. Stat. 1975, ch. 110A, par. 615) to reduce the degree of the original conviction to a lesser included offense, we order the entry of judgment on the conviction for the attempt to murder Cheryl Edwards and remand the case to the trial court for resentencing.

Reversed and remanded.

SIMON and McGILLICUDDY, JJ., concur.