THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TERRANCE SMITH, a/k/a James E. Waddy, Defendant-Appellant.

First District (3rd Division)     No. 80-356

Opinion filed March 25, 1981.

James J. Doherty, Public Defender, of Chicago (Ina S. Marks and Frances Sowa, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, James S. Veldman, and Edwin Bishop, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Defendant was charged with the murder of Robert Stewart, the attempt murders of Troy Stewart and William Rayburn, the aggravated battery of Troy Stewart and the armed robberies of the deceased and Rayburn. Prior to trial, the State *nolle prossed* the aggravated battery charge. A jury acquitted defendant of the armed robbery charges. The jury found defendant guilty of murder and of the two attempt murders and the court sentenced him to a term of 200 to 300 years on each charge, the sentences to run concurrently. (A co-defendant, Ricky Bell, was charged with the same crimes, and a jury found him guilty of all charges. The court sentenced Bell, who is not involved in this appeal, to 25 to 40

years for murder, to 20 to 40 years for each attempt murder, and to 15 to 25 years for each armed robbery, the sentences to run concurrently.)

· On appeal defendant, through counsel, contends that the trial court erred in not submitting to the jury tendered instructions on manslaughter, aggravated battery and reckless conduct; that certain comments by the prosecutor during closing argument deprived him of a fair trial; and that the sentences imposed are excessive. In addition, defendant has filed a *pro se* brief arguing that he was not proved guilty beyond a reasonable doubt, and that he was prejudiced by the use of a dual jury. The facts are as follows.

The incident occurred on the evening of March 4, 1977, at the deceased's home in Chicago. Theresa Perry testified that she, deceased, William Rayburn and Troy Stewart, deceased's 15-year-old nephew, were present when defendant, Bell and an unknown man came to the door. After Perry talked to the three men, they left but returned several minutes later. When Rayburn answered the door, defendant was pointing a pistol and the other men had their hands in their pockets as if they had guns. Defendant guided Perry to the second floor where he made deceased stand against the wall and took money from him.

Defendant held deceased and Rayburn at gunpoint while Bell and the other men searched the premises. Defendant then directed deceased and Rayburn to lie on the floor face down. Defendant stated that he was not going to leave any witnesses to tell what happened. When Perry began to cry, defendant warned her that she would be killed first.

Perry further testified that Bell told defendant it was not worth it to kill anyone for what they were getting but defendant repeated that he wanted no one left to call the police. Bell acquiesced and told defendant to get on with it. Perry saw defendant shoot at the deceased. As she fled into the washroom, Perry heard several shots and then two empty clicks. When she emerged from the washroom, Perry found the boy, Troy Stewart, lying in a pool of blood.

Troy Stewart testified that he was awakened by voices and saw defendant waving a pistol as he talked to the deceased. Troy heard defendant say he was not going to leave any witnesses. He heard a shot and saw Rayburn, followed by the deceased, running. The two men jumped through windows in Troy's room. As Troy jumped from the bed and began running, he was shot three times in the back, once in the arm and once in the finger. Troy fell face first on the floor. As he turned on his side, defendant was standing over him with the gun pointed at Troy's head. Troy asked defendant not to shoot, but defendant pulled the trigger twice. The gun did not fire, and defendant departed.

Rayburn's testimony was essentially the same as that of the other

State witnesses. When defendant shot at the deceased, Rayburn stood up and ran through a closet and dove through a closed window in Troy's room. As he landed, he heard more shots and ran down the street in a zigzag fashion. Rayburn called the police and was taken to a hospital for treatment of a sprained leg. When Rayburn ran through Troy's room, he heard the deceased running behind him. He saw deceased try to raise the other window, then heard more shots and saw the deceased go through the window.

A police officer testified that the deceased was lying on the ground, unconscious and bleeding from the head and arm. The doctor who performed the autopsy on the deceased testified that the cause of death was head and abdominal injuries as a result of a fall. The doctor also testified that the deceased had incurred a bullet wound in the arm.

Defendant testified that he went to the deceased's home to recover money taken from defendant's sister by the deceased during a drug purchase. Defendant knew Rayburn and the deceased carried guns so he brought along his gun which he placed in his trousers. Defendant was accompanied by Bell and a third man. After waiting several minutes, they were admitted into the home by Rayburn. Guided upstairs, defendant saw the deceased five feet away and holding a gun.

While defendant asked the deceased for his sister's money, Rayburn left to answer the door. Rayburn returned with a gun in one hand and money in the other. As the conversation between defendant and the deceased continued, Perry walked between them and defendant shoved her. Deceased jumped back and Rayburn "moved around." Defendant pushed Rayburn and when Perry shouted, defendant shoved her again. A shot was fired, and defendant believed that the deceased fired it. Defendant "jumped around the corner," started firing and "emptied" his gun. Defendant believed that the deceased intended to kill him. Defendant stated that he did not intend to kill anyone; he did not see the two men go through the windows, and he did not see Troy Stewart.

We first address defense counsel's contention that the trial court erred in refusing to submit certain instructions to the jury. The trial court submitted an instruction on self-defense tendered by defendant, but refused to submit defendant's instruction on voluntary manslaughter. Defendant maintains that this refusal was error.

■■ In *People v. Lockett* (1980), 82 Ill. 2d 546, our supreme court addressed this precise issue and held that in a murder case where there is evidence in the record to support a self-defense instruction, a voluntary manslaughter instruction must also be given if tendered by defendant. The court reasoned that when presented with a self-defense theory, a jury could believe that defendant acted under a subjective belief that force was necessary, but at the same time reject the reasonableness of defend-

ant's belief. This acceptance by the jury of a portion of defendant's self-defense claim would reduce the crime to voluntary manslaughter. Similarly, in the present case, defendant presented evidence supporting a self-defense theory and an instruction on that theory was given. Under the *Lockett* holding, the jury should have been instructed on the offense of voluntary manslaughter when defendant submitted the instruction. The murder count must be retried.

We next consider defense counsel's claimed errors regarding the convictions for attempt murder. Defendant maintains that the offenses of aggravated battery and reckless conduct are lesser included offenses of attempt murder, and that he was entitled to instructions on these offenses.

Under the facts of the present case, aggravated battery is included in the greater offense of attempt murder. (*People ex rel. Walker v. Pate* (1973), 53 Ill. 2d 485, 292 N.E.2d 387; *People v. Jenkins* (1976), 41 Ill. App. 3d 392, 354 N.E.2d 139.) Where there is evidence in the record which would reduce the crime to a lesser rather than the greater offense, defendant is entitled to an instruction on the lesser-included offense. (*People v. White* (1980), 86 Ill. App. 3d 19, 407 N.E.2d 572; *Sansone v. United States* (1965), 380 U.S. 343, 13 L. Ed. 2d 882, 85 S. Ct. 1004.) We hold, however, that in the present case defendant was not entitled to an instruction on aggravated battery because no evidence in the record would reduce the conviction to the lesser, rather than the greater, offense. The State presented overwhelming evidence that defendant intended to kill Troy Stewart and Rayburn. Troy, 15 years old, survived the shooting and testified that defendant shot him three times in the back. As Troy lay on the floor, defendant pointed the gun at Troy's head and pulled the trigger. Defendant had already emptied the chamber, however, so no more bullets were fired. Additionally, Rayburn was standing only a few feet from defendant when defendant fired the shots which forced Rayburn to jump through a closed window.

■■ Defendant presented a theory of self-defense which, if believed, would permit him to intentionally shoot at another to kill and yet be found not guilty. (*People v. Saunders* (1974), 18 Ill. App. 3d 117, 309 N.E.2d 350.) Defendant testified that the deceased was a few feet in front of him when defendant "emptied" his gun. It is not only true that the specific intent to kill may be inferred from the circumstances surrounding the defendant's actions (*People v. Humes* (1979), 78 Ill. App. 3d 255, 397 N.E.2d 130), but also that the doctrine of "transferred intent" mandates that this specific intent to kill one person in self-defense be transferred to third parties ultimately affected by the acts of self-defense. (*People v. Humes.*) Hence, defendant's specific intent to kill the deceased in self-defense is transferred to Troy and Rayburn. The jury could have believed defendant's claim and determined that he justifiably shot at the deceased

in self-defense, and thereby exonerate him from the attempt murders of Troy and Rayburn. (*People v. Adams* (1972), 9 Ill. App. 3d 61, 291 N.E.2d 54.) If the jury disbelieved defendant's theory, however, in whole or in part, defendant would be found guilty of attempt murder. Unlike *People v. Lockett*, where the self-defense theory propounded by defendant raised a factual dispute as to the reasonableness of defendant's belief which was determinative of the lesser voluntary manslaughter offense, the lesser offense of aggravated battery here does not turn on the reasonableness of defendant's belief that force was necessary. There was no evidence here to support a finding that defendant merely "knowingly" shot (*People v. Smith* (1980), 90 Ill. App. 3d 83, 412 N.E.2d 1102), rather than specifically shooting to kill. (*People v. Harris* (1978), 72 Ill. 2d 16, 377 N.E.2d 28.) The instruction requested therefore would not have added any other issue for the jury's determination. The court therefore properly refused the aggravated battery instruction. (*People v. White; Sansone v. United States.* See also *People v. Handley* (1972), 51 Ill. 2d 229, 282 N.E.2d 131.) In *Handley*, cited with approval in *People v. Lockett*, the court held that although there was evidence the victim knocked down and choked two assailants during a struggle, in view of the circumstances surrounding the incident, the victim's actions could not "possibly be considered a serious provocation" so that the trial court properly refused a manslaughter instruction on the basis that there was no evidence in the record from which the jury could have found defendants guilty of manslaughter. See also *People v. Robinson* (1980), 87 Ill. App. 3d 621, 410 N.E.2d 121.

■■ Defendant, through counsel, also contends that the court erred in refusing to give a reckless conduct instruction. Our supreme court has recently declined to decide the question whether reckless conduct may be a lesser included offense of attempt murder. (*People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331.) In the present case, we find it unnecessary to address the issue since there is no evidence in the record to support the giving of this instruction. Defendant admittedly emptied a gun at persons within a few feet from him. Defendant testified that he thought the deceased intended to kill him. There is no evidence whatsoever to indicate that defendant acted recklessly, as opposed to intentionally. The trial court properly denied defendant's reckless conduct instruction.

Defendant, through counsel, also contends that he was prejudiced by certain remarks made by the prosecutor during closing argument.

■■ When called as a witness, defendant affirmed the truthfulness of his testimony, as opposed to swearing under oath. The prosecutor in closing argument commented on "this affirmation stuff." Defendant offered no objection to the comment, and we consider the contention waived. (*People v. Daniels* (1979), 76 Ill. App. 3d 646, 395 N.E.2d 163.) Moreover,

an examination of the record discloses that the thrust of the comment was directed at defendant's credibility in general, and the prosecutor did not focus on any distinction between an oath and an affirmation.

■■ The prosecutor also remarked on the absence of a self-defense theory in defense counsel's opening statement. A defendant need not present his defense in the opening statement. (*People v. Church* (1937), 366 Ill. 149, 7 N.E.2d 894; *People v. Fuerback* (1966), 66 Ill. App. 2d 452, 214 N.E.2d 330.) The prosecutor's remark thus was improper but did not constitute reversible error. In light of the overwhelming evidence of guilt, the comment cannot be deemed a material factor in defendant's convictions. (*People v. Shorter* (1978), 59 Ill. App. 3d 468, 375 N.E.2d 513.) Defendant was not deprived of a fair trial by the prosecutor's closing argument.

Defendant, through counsel, also contends that his sentences are excessive and should be reduced in light of the disparate sentences received by Bell.

■■ We do not believe the sentences received by defendant are excessive. Defendant did all the shooting. He shot a 15-year-old boy in the back three times, and then pulled the trigger twice when the gun was pointed at the boy's head. It was defendant who shot at Rayburn, thus compelling him to jump out a closed window. And it was defendant who stated that he did not wish to leave witnesses. On the other hand, Bell initially advised defendant not to shoot the victims. There was a significant distinction in the nature and extent of each defendant's involvement in the crimes. (*People v. Ganter* (1977), 56 Ill. App. 3d 316, 371 N.E.2d 1072.) Under these facts and circumstances, the trial court did not abuse its discretion in imposing more severe sentences for attempt murder on defendant than on Bell. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

Additionally, defendant has filed a *pro se* brief in which he argues that he was not proved guilty beyond a reasonable doubt, and that he was denied a fair trial because of the use of a dual jury.

Defendant's contention that he was not proved guilty of murder and attempt murder beyond a reasonable doubt merits scant attention. The State's evidence of defendant's guilt was overwhelming, where it presented three occurrence witnesses, including a survivor who was shot five times by defendant. The jury's function is to determine the credibility of witnesses and to draw inferences from evidence, and we will not substitute our judgment on such issues. *People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733.

Defendant also maintains that he was denied a fair trial because he and Bell were tried simultaneously in one courtroom by two separate juries.

■■ Defendant was not prejudiced by this procedure. He was given every

opportunity to present a complete defense before one jury, coterminous with what would have attached had there been no co-defendant. Nor has defendant pointed to any occurrence which confused the jury or affected its ability to render a decision fairly. Rather, the record discloses that the trial court thoroughly prepared the jurors for the procedure. Absent any showing of prejudice, we cannot speculate as to any impropriety in the procedure. *People v. Townsend* (1957), 11 Ill. 2d 30, 141 N.E.2d 729

■■ Because the murder charge must be retried, we mention defendant's contention that he was entitled to an instruction on involuntary manslaughter. That offense requires recklessness (Ill. Rev. Stat. 1977, ch. 38, par. 9—3(a)), as opposed to intentional acts. No evidence exists to support this proposition in this case, and the trial court properly refused to give an involuntary manslaughter instruction.

For the foregoing reasons, the judgments of the circuit court of Cook County as to the attempt murder convictions are affirmed. The judgment as to the murder conviction is reversed, and the cause is remanded for further proceedings.

Affirmed in part; reversed and remanded in part.

RIZZI, P. J., and McGILLICUDDY, J., concur.