THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ARTHUR DENT, Defendant-Appellant.

First District (1st Division)   No. 1—89—3394

Opinion filed April 27, 1992.—Rehearing denied June 23, 1992.

Randolph N. Stone, Public Defender, of Chicago (Hugh Stevens, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Michael Latz, and John E. Gilhooly, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

After a jury trial, defendant Arthur Dent was convicted of first-degree murder. Defendant appeals his conviction, arguing that he was not proven guilty beyond a reasonable doubt, that the prosecution's comments regarding the cause of decedent's death were improper and prejudicial and that the prosecution's question to defendant of whether it was an initiation rite of his gang to kill a human being was improper and prejudicial.

Defendant was arrested on October 26, 1988, and charged with first-degree murder for the shooting death of decedent Andre Porter. Police officer Andre Mack testified that on October 19, 1988, at approximately 1:30 a.m., he was patrolling the vicinity of 4130 South Drexel Boulevard and noticed a person lying in the parkway as if he were sleeping. Since this was a common occurrence, Mack did nothing at this time. Mack drove by this same parkway at approximately 5:30 a.m. and noticed the same figure there. As Mack approached, he observed that it was a body of a male lying facedown. Mack examined the body and discovered that the person was dead. Mack also testified that 820 East Bowen is approximately one-half block away from where the body was found.

Next, the prosecution called Detective George Carey, who testified that at approximately 6 a.m. on October 19, 1988, he was assigned to investigate decedent's death. Carey arrived on the scene to observe that the body was still lying in the facedown position. Upon closer examination of the body, Carey discovered gunshot entry and exit wounds on the decedent's arm and a reentry wound in the decedent's left chest area. Carey testified that he found no blood around the body.

Mark Capers testified for the prosecution as an occurrence witness. Capers testified that he is a member of the Black Gangster Disciples street gang (Disciples). The Disciples' "territory" includes the housing project located at 733 East Bowen where Capers was residing at the time of decedent's death. Capers had known decedent for

about four years and testified that decedent was also a member of the Disciples. Capers claimed that he knew defendant as Prince Steve of the enemy street gang, the King Cobras (Cobras). Capers stated that the title name "Prince" referred to a leadership position within the Cobras. On October 18, 1988, at approximately 7:30 p.m., Capers was on the second-floor balcony at 820 East Bowen with four or five other people. Decedent arrived at 8 p.m. At 10:15 p.m., defendant and Ralph James appeared on the balcony, reached into their jackets and pulled out guns. From a distance of four feet away, defendant and James shot in the direction of decedent. The group ran to the stairs. Capers testified that the following morning he was informed that Porter was dead. Capers went to the police station to reveal what he knew about the shooting. On October 26, 1988, Capers viewed a formal lineup and identified defendant as being one of the shooters.

Kobie Hunter testified that on October 18, 1988, at 9:15 p.m. he went to the second-floor balcony at 820 East Bowen. Hunter did not know decedent and had never seen him before that night. At 10:15 p.m., defendant and James arrived on the balcony. Hunter testified that defendant said something to decedent and pulled a gun out of his pocket. When Hunter saw the handle of the gun, he started to run. Hunter heard three shots. Hunter called the police to report that his friend Jerry Coleman had been shot. On October 26, 1988, Hunter was taken to the police station to view a formal lineup. Hunter identified defendant as the person who did the shooting. Hunter and also Darryl Phillips, another occurrence witness, testified that the lighting condition on the balcony the night of the shooting was bright and that they had no problem seeing defendant's face. Hunter and Phillips both made in-court identifications of defendant. Hunter further stated that he was only testifying because he was subpoenaed.

The parties stipulated that Dr. Choi, a deputy medical examiner, who performed the autopsy on decedent, would testify that he found internal bleeding in decedent's chest cavity and that a bullet had penetrated the left upper lung and left ventricle of the heart. Dr. Choi would have testified that decedent's death was a homicide caused by a gunshot wound.

Police officer John Robertson testified that he spoke with the occurrence witnesses, Hunter, Phillips and Capers, who gave him the names of two people involved in the shooting, Arthur Dent, also known as "Prince Steve" and Ralph James, also known as "Chicken Wing." Robertson arrested defendant at his home. Defendant stated that he was the leader of the Cobras and that James was a "soldier" in the Cobras. Robertson testified that defendant was proud of his po-

sition in the Cobras and told Robertson that he would not go out on "hits" (shootings to kill people), but rather, would order them.

Lastly, defendant testified that he was not in a gang at the time of decedent's shooting death. Defendant testified on direct examination that he quit the Cobras in 1985, but on cross-examination, he claimed that he quit in 1987. Defendant stated that he went to the second-floor balcony and spoke with decedent about purchasing marijuana. Decedent pointed out a male on the playground below the balcony as a person who would sell marijuana to defendant. Defendant further testified that he thanked decedent for the information and turned to go down the stairs, when he heard a loud noise like a gunshot. Defendant ran down the stairs and stopped at the bottom, at which time he heard three or four more shots. Defendant also testified that he was not friends with "Chicken Wing," and that "Chicken Wing" had joined the Cobras after he had quit. Defendant denied telling police that he was the leader of the Cobras or that he was friends with "Chicken Wing." Defendant claimed that the leader of the Cobras is known as the "King." There are smaller leaders under the "King" known as "generals" and "officers." Defendant denied having a leadership position in the gang, even though he was known as "Prince Steve." Defendant stated that he was nicknamed after the rock star "Prince."

After closing arguments, the jury found defendant guilty of first-degree murder. The trial court sentenced defendant to 30 years' imprisonment in the Illinois Department of Corrections.

Defendant argues that the evidence at trial was insufficient to prove beyond a reasonable doubt that defendant's actions caused decedent's death. The prosecution argues that the circumstantial evidence was sufficient to prove defendant guilty of murder beyond a reasonable doubt. Testimony at trial revealed that defendant fired three or four shots directly at decedent from a distance of three to four feet. Decedent's body was found a few hours after the shooting only one-half block away from the scene of the shooting.

The standard for reviewing a conviction which is challenged on the sufficiency of the evidence is whether in viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781.) Once a defendant has been found guilty of a crime, the fact finder's role as weigher of the evidence is preserved through a legal conclusion. (*Jackson*, 443 U.S. at 319, 61 L. Ed. 2d at 573, 99 S.

Ct. at 2789.) A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Vriner* (1978), 74 Ill. 2d 329, 342, 385 N.E.2d 671, 676.

■ Defendant argues that all the evidence against him is circumstantial and that such evidence was insufficient to prove him guilty of murder. Circumstantial evidence is proof of facts or circumstances that give rise to reasonable inferences of other facts that tend to establish the guilt or innocence of the defendant. (*People v. Jenkins* (1983), 117 Ill. App. 3d 33, 452 N.E.2d 867.) The fact finder(s) do not have to be satisfied beyond a reasonable doubt as to each link in the chain of circumstantial evidence (*People v. Hall* (1986), 114 Ill. 2d 376, 409, 499 N.E.2d 1335, 1348); rather, it is sufficient if all the evidence taken as a whole satisfies the fact finder(s) beyond a reasonable doubt of defendant's guilt. (*Hall*, 114 Ill. 2d at 409, 499 N.E.2d at 1348.) It is well-established law that a defendant can be convicted of a crime solely on the basis of circumstantial evidence. *People v. Bennett* (1987), 162 Ill. App. 3d 36, 515 N.E.2d 840; *People v. Edwards* (1991), 218 Ill. App. 3d 184, 196, 577 N.E.2d 1250, 1258.

■ Defendant argues that the State failed to prove material elements of murder, namely, proof of death and proof of a criminal agency causing death. It is true that the evidence must show "that the defendant's act was, beyond a reasonable doubt, a contributing cause to a death such that the death did not result from a source unconnected with the defendant's act." (*People v. Brown* (1978), 57 Ill. App. 3d 528, 531, 373 N.E.2d 459, 461.) Defendant argues that the " 'general public's perception' indicates that a person shot in one arm, one lung and the heart is not going to go anywhere, let alone down a flight of stairs and half a city block. The same type of perception indicates that a person found shot to death at that time and location with no wallet or any other identification, may well have been the victim of an armed robbery." We agree that these "perceptions" may be *possible* and the robbery scenario "could have" happened. We, however, are obliged to review the evidence, direct and circumstantial, in a light most favorable to the State. *Collins*, 106 Ill. 2d 237, 478 N.E.2d 267.

■ When viewed in the above light, the circumstantial and direct evidence proves beyond a reasonable doubt that defendant shot and killed decedent. Three eyewitnesses to the shooting identified defendant as one of the two gunmen. These witnesses stated that defendant pulled out a gun and shot in decedent's direction from a distance of about three to four feet away. There was evidence that the gunmen

were members of a rival gang. The medical evidence indicates a bullet traveled through decedent's arm and lodged in his chest. Two police officers testified that there were no signs of external bleeding. Additionally, medical testimony established that decedent suffered from internal bleeding in his chest cavity.

The fact finder is not required to accept defendant's scenario just because it was "possible." It is the fact finder's duty to judge the credibility of the witnesses and determine the weight to give to the evidence. (*People v. Young* (1989), 128 Ill. 2d 1, 51, 538 N.E.2d 453, 473.) Therefore, the "perceptions" and scenarios proposed by defendant are irrelevant. We find that after considering all the evidence as a whole, in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of murder beyond a reasonable doubt were committed by defendant.

■ Defendant argues that during closing arguments, the State misstated facts in evidence and mischaracterized defense counsel's closing argument. Moreover, defendant argues that the prosecution committed reversible error by arguing that "there was no external bleeding," "he [decedent] died of internal bleeding" and "that all of the witnesses said the shooting happened at 820 East Bowen and the defendant got up there and said the same thing." We find that the above comments were proper summations of the evidence or reasonable inferences drawn therefrom, and therefore, no reversible error was committed.

Attorneys are allowed great latitude during closing arguments. (*People v. Amos* (1990), 204 Ill. App. 3d 75, 85, 561 N.E.2d 1107, 1115.) The prosecution can base its argument on evidence presented at trial, as well as all reasonable inferences which can be drawn therefrom. (*People v. Linscott* (1991), 142 Ill. 2d 22, 38, 566 N.E.2d 1355, 1362.) Two police officers testified that they did not find any trail of blood leading to or from decedent's body and that they did not observe a pool of blood under or around his body. A reasonable inference which could be drawn from this testimony is that there was no external bleeding. The prosecution's argument that "there was no external bleeding," thus, was proper argument. Furthermore, there was medical evidence, to which defendant stipulated, that decedent suffered a condition known as hemothorax, which in lay person's terms is internal bleeding. This testimony, coupled with the facts that there were no signs of external bleeding and that decedent was shot in the heart, could lead to the reasonable inference that defendant died of internal bleeding. The prosecution's comments during closing argument regarding the above were proper.

During closing arguments, defense counsel argued that the prosecution did not prove that decedent was shot at 820 East Bowen. In response, the prosecution argued that "they [Phillips, Hunter and Capers, the occurrence witnesses] said the shooting happened at 820 East Bowen and the defendant got up there and he said the same thing." Defendant argues that the prosecution's reply was improper and prejudicial because "[n]one of the eyewitnesses or the defendant testified they saw decedent get shot at 820 E. Bowen." That is true; no one testified that he *saw* decedent get *shot* at 820 East Bowen. The State's argument, however, was not that the witnesses *saw* decedent get shot, but rather that defendant was at 820 East Bowen when he shot directly at decedent from three to four feet away and that defendant, himself, testified that a shooting did occur at that address. Not only does defendant misstate the record, he takes the prosecution's argument out of context. The prosecution was commenting on Capers', Hunter's and Phillips' credibility by stating that even the defendant agreed that there was a shooting at 820 East Bowen. We find that the prosecution's comment was not improper or prejudicial.

Defendant further argues that the prosecution's reference to defense counsel's opening statement was improper. We find, however, that the reference was harmless error. (See *People v. Smith* (1981), 94 Ill. App. 3d 969, 975, 419 N.E.2d 404, 408.) The prosecution commented, "At the beginning of this trial Mr. Eppenstein [defense counsel] told you *** and maybe I'm wrong but I thought I heard him say that one of the things that was not in issue was that on that particular night the victim in this case got shot and got shot at 820 East Bowen." Defense counsel immediately objected to the comment and the trial court sustained the objection. After the objection was sustained, the prosecution made no further reference to defense counsel's opening statement. The prosecution's reference to defense counsel's opening statement was not a material factor in defendant's conviction; therefore, the comment was harmless error. See *Smith*, 94 Ill. App. 3d at 975, 419 N.E.2d at 408.

Next, defendant argues that it was error for the prosecution to characterize defense counsel's theory as ridiculous, farfetched or outlandish. The Illinois Supreme Court has held that an attack on a particular theory of defense does not necessarily prejudice the defendant. (*People v. Phillips* (1989), 127 Ill. 2d 499, 526, 538 N.E.2d 500.) A reviewing court should assess arguments of counsel in the context of the whole trial and should sustain a conviction unless it appears that an improper comment substantially prejudiced the accused. (*People v. Harbold* (1984), 124 Ill. App. 3d 363, 371, 464 N.E.2d 734, 741,

citing *People v. Tate* (1970), 45 Ill. 2d 540, 545-46, 259 N.E.2d 791, 794.) In *People v. Trask* (1988), 167 Ill. App. 3d 694, 521 N.E.2d 1222, the prosecution referred to defendant's defense as a "sham" several times during closing argument. The court held that such references were not error, reasoning that the prosecution was "merely commenting on the unbelievability of defendant's testimony. In context, such a characterization does not seem prejudicial given the evidence against defendant." (*Trask*, 167 Ill. App. 3d at 713, 521 N.E.2d at 1235.) The court also found it significant that the trial court immediately sustained an objection to the argument. *Trask*, 167 Ill. App. 3d at 713, 521 N.E.2d at 1235.

The context of the complained-of argument in the case at bar is analogous to *Trask*. In the case at bar, the prosecution was commenting on how ridiculous the defense's theory was in light of the evidence. The prosecution said: "Two different people out to kill a guy the same night. That is ridiculous." After an objection, the trial court stated that the "jury has heard the testimony." The prosecution went on to argue that defense counsel "mentioned this outlandish theory to you because he doesn't want you to see what the real evidence is in this case." Defense counsel objected to that comment, arguing that it was "[b]urden shifting." The trial court immediately sustained the objection. Any prejudice which may have occurred because of the complained-of remarks, thus, was cured when the trial court immediately sustained defendant's objection to the comments. Defendant was not deprived of a fair trial, thereby requiring a reversal. See *Trask*, 167 Ill. App. 3d at 713, 521 N.E.2d at 1235.

■ Defendant also argues that the above comments on the defense's theory, coupled with other comments made by the prosecution during closing arguments, amounted to accusations by the prosecution that defense counsel was employing trickery. When read in context, it is clear that the comments which the defendant claims amount to an accusation of trickery on the part of defense counsel were made by the prosecution to convey the idea that defense counsel's closing argument avoided the evidence actually presented at trial. The prosecution argued that defense counsel's theory that decedent was shot by someone other than defendant at a different place and time than the shooting which occurred on the balcony of 820 East Bowen was outlandish in light of the testimony of three eyewitnesses who saw defendant shoot directly at decedent from a short distance the night he was murdered. Since the prosecution was merely charging that the defense counsel was attempting to obscure the evidence, reversible error was not committed. See *People v. Brown* (1977), 47 Ill. App. 3d

920, 930-31, 365 N.E.2d 514, 522; *People v. Lavoy* (1980), 91 Ill. App. 3d 639, 644, 415 N.E.2d 487, 491.

■ Defendant contends that it was improper for the prosecution to question him about gang initiation rites, namely, whether the Cobras required gang members to kill a human being in order to become a member. The defendant answered "no" to the above question. Defendant argues that the question violated the requirement of good-faith cross-examination and extremely prejudiced the defendant. Defendant contends that there was no evidence presented to support the prosecution's inquiry. This contention is untrue. A police officer testified that defendant told him that he was a leader in a gang and that decedent was a member of a rival gang. More specifically, defendant stated that he knew decedent as the person who injured the arm of a fellow member of the Cobras.

The prosecution's question concerning initiation was relevant to show motivation for the murder. Proof of gang membership is relevant and admissible where there is sufficient proof of a relationship between such affiliation and the crime charged, including motive or common purpose. (*People v. Anderson* (1987), 153 Ill. App. 3d 542, 549, 505 N.E.2d 1303, 1308, citing *People v. Hairston* (1970), 46 Ill. 2d 348, 263 N.E.2d 840; *People v. Jackson* (1986), 145 Ill. App. 3d 626, 495 N.E.2d 1207; *People v. Calderon* (1981), 98 Ill. App. 3d 657, 424 N.E.2d 671.) When relevance is established, the evidence need not be excluded because it tends to prejudice the defendant. (*Anderson*, 153 Ill. App. 3d at 549, 505 N.E.2d at 1308.) We find that the prosecution's question was relevant to show motivation, and therefore, defendant is not entitled to a new trial.

For the foregoing reasons, the conviction and sentence of the circuit court of Cook County are affirmed.

Affirmed.

O'CONNOR and MANNING, JJ., concur.