THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GABRIEL LARA, Defendant-Appellant.

First District (5th Division)   No. 1—95—1930

Opinion filed June 27, 1997.

Michael J. Pelletier and Raymond L. Beck, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Thomas V. Gainer, Jr., Assistant State's Attorneys, of counsel), for the People.

JUSTICE SOUTH delivered the opinion of the court:

Defendant, 18-year-old Gabriel Lara, was charged by indictment with the offense of first degree murder. Following a bench trial, the

trial court entered a finding of guilty and sentenced defendant to 22 years in prison. Defendant appeals.

On December 9, 1993, the victim, 22-year-old Hector Ramos, drove several coworkers home from Wauconda. After stopping to drop off a passenger, Hector drove into an alley near Augusta Boulevard around 6 p.m. and encountered a van proceeding toward his station wagon. Hector, unable to drive around this van, reversed and backed to the end of the alley. At that point, two men exited the van. Hector exited his station wagon and told his passengers to get out with him. Hector's passengers, Guadalupe Trujillo, Onesimo Trujillo and Valentine Galvan, complied with his request. An argument ensued between Hector and the driver of the van. Hector and two of his three passengers then picked up bricks from the alley, and the two men returned to the van. The van was backed out of the alley and was driven away.

After the van left the scene, Hector and Valentine Galvan dropped their bricks in the alley and returned to the station wagon. Guadalupe Trujillo placed the bricks he was holding into the station wagon. Hector and his passengers proceeded to Guadalupe Trujillo's residence at 1421 West Augusta Boulevard, where he parked the station wagon and exited the vehicle.

After Hector parked, the van appeared and was parked nearby. Guadalupe and Onesimo Trujillo exited the station wagon, and Valentine Galvan remained inside the vehicle. Several individuals exited the van, and the driver of the van started to whistle. A large group of men appeared, and Hector and the driver of the van began to fight. During this fight, Hector had a brick in his hand. The driver of the van got the best of Hector, and the fight ended. At that time, Hector dropped the brick to the ground.

After Hector dropped the brick to the ground, defendant approached Hector and hit him in the head with a board. Valentine Galvan attempted to assist Hector but Valentine was struck in the head with a beer bottle by the driver of the van. Hector's station wagon was then stolen, presumably by someone from the van. Valentine and Hector went to the Trujillo residence and then to the home they shared with Lydia Ramos.

Lydia Ramos, Hector's sister and the wife of Valentine, testified that when Hector came home from work on December 9, 1993, around 7 p.m., he appeared to be tired, pale, sweaty and in pain. He also had a large bump on the right side of his head. She took Hector to Norwegian American Hospital, and he was later transferred to Cook County Hospital, where he died on December 17, 1993.

Police investigation led to the arrest of defendant at his resi-

dence. On December 10, 1993, defendant told detectives that he struck Hector in self-defense because Hector had picked up a brick, turned toward him and raised up his arm as if he were going to throw the brick at him.

The detectives also had a conversation with defendant's brother, Miguel Lara. Miguel stated that he observed the fight between the victim and the man from the van. He thought the fight was over as one of the victim's friends took the bricks away from the victim and threw them down. Miguel told the detectives that a man from the van hit the man from the station wagon in the head with a 2 by 4.

When the detectives told Miguel that defendant had already told them that he had hit the victim in the head with the 2 by 4, Miguel agreed. Miguel also agreed the man who was struck had no bricks in his hand.

After speaking with Miguel, the detectives again spoke to defendant. The detectives informed defendant that his brother, Miguel, stated that the victim did not have bricks in his hand. Defendant then told the detectives that, after the fight, he "reacted" and just hit the victim in the head with the 2 by 4.

Thereafter, defense counsel filed motions to quash defendant's arrest and suppress various statements that he made to the detectives and to suppress the showup identification. The trial court ruled that because of defendant's low IQ, his age, educational background and inability to read well, he deserved some additional "leeway." Subsequently, the court suppressed defendant's statement as direct evidence but allowed it as impeachment.

The trial judge ruled that Miguel Lara's statement was admissible as substantive evidence and denied defendant's motions to quash the arrest and suppress the showup identification. Following a bench trial, the court entered a finding of guilty of first degree murder. After the denial of a post-trial motion and a motion in arrest of judgment, defendant was sentenced to 22 years in prison.

## OPINION

■ Defendant first contends that he was not proved guilty beyond a reasonable doubt because he acted in self-defense. The standard for reviewing a conviction that is challenged on the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Dent*, 230 Ill. App. 3d 238, 595 N.E.2d 18 (1992). Once a defendant has been found guilty of a crime, the fact finder's role as weigher of the evidence is preserved through a legal conclusion.

*Dent*, 230 Ill. App. 3d 238, 595 N.E.2d 18. On review, this court will not reverse a criminal conviction unless the evidence is so improbable or unsatisfactory that a reasonable doubt of defendant's guilt is justified. *People v. Moore*, 171 Ill. 2d 74, 662 N.E.2d 1215 (1996).

■ Self-defense is an affirmative defense to the charge of murder. When raised by defendant with some evidence, the State has the burden of proving that defendant is guilty beyond a reasonable doubt. *People v. Rogers*, 263 Ill. App. 3d 120, 635 N.E.2d 889 (1994). Whether a killing is justified under the law of self-defense is a question of fact to be decided by the trier of fact. *People v. Turcios*, 228 Ill. App. 3d 583, 593 N.E.2d 907 (1992). A court must decide whether the facts and circumstances would induce a reasonable apprehension of serious bodily harm in light of defendant's perception of the situation when he used force against his aggressor. *Rogers*, 263 Ill. App. 3d at 127. Unless the record raises serious questions regarding the appropriateness of the trier of fact's finding as to self-defense, it should not be disturbed by a reviewing court. *Turcios*, 228 Ill. App. 3d 583, 593 N.E.2d 907.

■ In the present case, the court found that defendant did not act in self-defense by striking the victim with a 2 by 4 in the head, which was supported by ample evidence.

The testimony of Valentine Galvan and Onesimo Trujillo, together with Miguel's statement, negated defendant's claim of self-defense beyond a reasonable doubt. Valentine Galvan testified that he saw the victim being struck by the board after the fight was over and that the victim did not have any bricks in his hands. Although he testified that he did not see who struck the victim, Galvan heard the man say, "I'm going to kill him right now," before the man picked up the board. The evidence adduced at trial established that defendant struck the victim in the head with the board.

Onesimo Trujillo testified that he saw the victim with a brick in his hand. However, when the fight between the victim and the driver of the van ended, he saw the victim throw the brick to the ground prior to being struck with the 2 by 4.

Defendant's testimony that he acted in self-defense and that the victim came at him with a brick was impeached by his prior statement that the victim did not have any bricks in his hands and that he reacted to the fight and struck the victim in the head with the 2 by 4.

Defendant's brother, Miguel, signed a statement the morning after the incident that was admitted as substantive evidence stating that, when the fight between the driver of the van and the victim was over, neighbors removed bricks from the victim's hands and

tried to calm the victim down. Defendant then picked up a long piece of wood that was lying in front of their house, with which he then struck the victim.

The court found that the State's witnesses, Valentine Galvan and Onesimo Trujillo, were credible and accepted their descriptions of the event. The court further found that it was highly persuasive testimony when defendant's brother came to court and, through the use of a statement taken contemporaneously with this event, said that the victim had nothing in his hands at the time he was struck. The court's finding is supported by the evidence, and this court will not disturb that decision.

Defendant next contends that his conduct was not proved beyond a reasonable doubt to be the cause of death. Defendant argues that the driver of the van was responsible for the injury from which the victim died.

■ The State must prove all the material and essential facts constituting the crime. *People v. Turner*, 127 Ill. App. 3d 784, 469 N.E.2d 368 (1984). When a defendant is charged with murder, the State must prove both the fact of death and the criminal agency causing death. *Turner*, 127 Ill. App. 3d 784, 469 N.E.2d 368. The evidence must show "that the defendant's act was, beyond a reasonable doubt, a contributing cause to a death such that the death did not result from a source unconnected with the defendant's act." *People v. Brown*, 57 Ill. App. 3d 528, 531, 373 N.E.2d 459, 461 (1978). As previously indicated, we are obliged to review the evidence in a light most favorable to the State. *Dent*, 230 Ill. App. 3d 238, 595 N.E.2d 18.

■ In this case, the State met its burden. Eyewitness accounts and defendant himself established that defendant struck the victim in the head with a 2 by 4. Defendant admitted striking the victim in the head with a 2 by 4 but proceeded with the affirmative defense of self-defense. The evidence established beyond a reasonable doubt that defendant did not act in self-defense. Thereafter, the defense and the State stipulated to the cause of the victim's death.

In summary, it was stipulated that Dr. Lawrence Cogan, an assistant Cook County medical examiner, would testify that the victim was pronounced dead on December 17, 1993, and that "the cause of death was blunt force injuries to the head, fracture of the skull, the left temporal bone, cerebral contusions, epidural hemorrhage, scalp hemorrhage. Craniotomy; marked hypoxic encephalomacia which actually means respirator change to the brain *** softening and autolysis, thrombosis of dural and cerebral vessels; focal areas of hemorrhage in the pons and bronchopneumonia of the lungs, referring to the respirator changes."

This evidence is sufficient to establish criminal agency. After considering all the evidence, the court found that the victim's death was caused by defendant striking him in the head with the 2 by 4. The stipulated cause of death is directly traceable to defendant's acts and comports with the lower court's finding. Based on the record, it cannot be said that this finding was unsupported by the evidence.

■ Alternatively, defendant contends that the victim's cause of death was the result of premature termination of life support measures at the hospital. There are dual standards in this state for determining death. " '[A] person is legally dead if he or she had sustained either (1) irreversible cessation of total brain function[s], according to usual and customary standards of medical practice, or (2) irreversible cessation of circulatory and respiratory functions according to usual and customary standards of medical practice.' " *In re Estate of Sewart*, 236 Ill. App. 3d 1, 14-15, 602 N.E.2d 1277 (1991), quoting *In re Haymer*, 115 Ill. App. 3d 349, 355, 450 N.E.2d 940, 954 (1983).

When circulatory and respiratory functions are mechanically maintained, the "irreversible cessation of total brain functions" or brain death standard may be used. *Janus v. Tarasewicz*, 135 Ill. App. 3d 936, 940, 482 N.E.2d 418 (1985). Although the courts have refused to establish criteria for determining brain death because the advent of new research and technologies continues to change the tests used for determining cessation of brain function, they have required that a diagnosis of brain death be made in accordance with the "usual and customary standards of medical practice." *Janus*, 135 Ill. App. 3d at 941. Therefore, expert medical opinion is necessary to a determination of brain death. *Sewart*, 236 Ill. App. 3d 1, 602 N.E.2d 1277.

■ In this case, the victim's cause of death was not a contested issue at trial. When the trial judge asked "[i]s there any issue as to the cause of death?" the defense responded "no." Defendant and the State stipulated that an assistant Cook County medical examiner's expert medical opinion was that the cause of death was blunt force injuries to the victim's head. The record reflects this diagnosis of death was made according to usual and customary standards of medical practice. On this evidence, it appears that the cause of the victim's death was defendant's striking the victim in the head with the 2 by 4, not premature termination of life support measures at the hospital.

After viewing all the evidence in a light most favorable to the State, the evidence proves beyond a reasonable doubt that defendant struck the victim in the head with a 2 by 4, causing the victim's death. Thus, a rational trier of fact could have found the essential elements of first degree murder beyond a reasonable doubt were com-

mitted by defendant. The evidence is not so improbable or unsatisfactory that a reasonable doubt of defendant's guilt is justified. Accordingly, we affirm defendant's conviction and sentence for first degree murder.

Pursuant to *People v. Nicholls*, 71 Ill. 2d 166, 374 N.E.2d 194 (1978), and relevant statutory provisions (725 ILCS 5/110—7(h) (West 1994); 55 ILCS 5/4—2002.1 (West 1994)), we grant the State's motion and incorporate as part of the judgment and mandate a fee of $100 for defending this appeal. In addition, pursuant to *People v. Agnew*, 105 Ill. 2d 275, 473 N.E.2d 1319 (1985), and section 4—2002.1 of the Counties Code (55 ILCS 5/4—2002.1 (West 1994)), we grant the State's motion and incorporate as part of the judgment and mandate an additional fee of $50 for oral argument in this case.

Affirmed.

HARTMAN, P.J., and HOFFMAN, J., concur.